T. C. HAUSER v. SAMUEL McD. TATE.

*Bank Officers—Notice—Fraud—Evidence.*

1. The president of a bank is chargeable with constructive notice of the management of its affairs by the cashier and other subordinate officers; and where such bank is doing business without legal organization he cannot escape the responsibility resulting from such notice by showing that he supposed himself the president of a legally constituted bank; if he has contributed the influence of his reputation to give undeserved credit to a spurious corporation.

2. Where the charge is a combination to defraud, the declarations of any one of the alleged confederates is evidence against the others, though

made in the absence of the latter, if made in furtherance of the common design ; and slight evidence of concert is sufficient to let in such declarations.

3. The liability of the ostensible president of a spurious bank for debts contracted by his assistance is not collateral, but direct and original, and he must respond in damages to the same extent as the bank, if legally constituted, would have been liable.

(*State* v. *George*, 7 Ired., 321, cited and approved.)

CIVIL ACTION commenced in Yadkin and removed by consent and tried at Spring Term, 1880, of ROWAN Superior Court, before *Buxton, J.*

Verdict and judgment for the plaintiff, appeal by defendant.

*Messrs. Clement, McCorkle* and *Watson & Glenn* for plaintiff.
*Messrs. Jones & Johnston, Henderson, Buxton* and *Folk*, for defendant.

SMITH, C. J. The act of the general assembly granting a charter to the bank of Statesville, ratified and taking effect from March 22, 1870, with a capital stock not to exceed $500,000, divided into shares of $100 each, authorized an organization when 200 shares were subscribed and the money paid, and the election of a board of directors to hold office for one year, and who should choose a president thereof.

Under the supervision of C. A. Carlton, one of the five designated commissioners, a stock subscription book was opened, in which are entered the name of R. F. Simonton as a subscriber for 180 shares, and the names of H. Reynolds, C. A. Carlton, A. M. Powell and Samuel McD. Tate, for five shares each. The signatures of Simonton and the defendant were genuine. Carlton denied any authority to sign his name or to bind him therefor. The name of Reynolds, since deceased, is not in his proper hand. The shares

taken by Powell and the defendant were, on March 27, 1871, the day of making the subscription as the defendant testifies, transferred to the said Simonton in the same book, after many intervening blank pages.  There was no proof of the amount and kind of funds paid in upon the subscriptions or of any organization under the act, or of the election of directors or other bank officers previous to the assumption and exercise of the corporate rights conferred, and the bank commenced operations under the agency of Simonton professing to be the cashier, and the presidency of the defendant as communicated to the public in advertisements and printed letter-heads, and in direct correspondence with one of the banks in New York, to whom was furnished the genuine signature of both of these officers, with their full consent.  The plaintiff, with the assurance that the bank was operated and managed under the control of the persons thus designated as president and cashier, both men of prudence and financial skill and experience as well as of high repute for integrity, deposited at different times sums of money which have been lost by mismanagement and disasters, and for the recovery of which in this action he sseks to charge the defendant personally.

The gravamen of the complaint is that there was never any proper organization under the charter, and the bank having no legal corporate existence, its name was assumed by said Simonton and his personal banking transactions conducted thereunder, in silent if not active co-operation with the defendant, and that the association of them in imposing upon the public a fraudulent, as and for a regular and real banking company, and thus securing and abusing the plaintiff's confidence to his injury and loss, renders each personally and equally exposed to his demand for redress.

These are the general facts which the plaintiff proposed to establish and in support of which much evidence was offered, and upon which depends the admissibility of such

as was the subject of exception during the progress of the trial and is set out in the transcript.

The plaintiff alleges that the defendant, owning no stock, and assigning that entered in his name, in permitting himself to be held out as the president and principal officer of a spurious banking institution, and thus giving it a personal sanction and credit, was in law, with or without any explicit knowledge or information of the manner in which its affairs were conducted, a participant with Simonton, the principal actor, in imposing it upon the public as real and trustworthy, and equally answerable to creditors, their relations to the public, although not *inter se,* being those of partners or *quasi* partners.

The evidence offered and received after objection rests upon the support of this hypothesis, consisting of printed letter-heads used in correspondence, declarations of Simonton, and letters written by him in his capacity of cashier in the bank business, letters copied from the press after notice to produce the originals addressed to him, his own letters to Simonton and the stock subscription book. The competency of most of this evidence depends upon the foundation laid for its introduction in the proof of the personal relations subsisting between them and their co-operation in getting up and carrying on the banking business, and its effect must be judged of by the jury in passing upon the existence of the confederate relations between them.

"The president is usually expected," says a standard authority, "to exercise a more constant, immediate and personal supervision over the affairs of the bank than is required from any other director." Morse Bank. 128.

" Bank directors are not mere agents, like cashiers, tellers and clerks. It is the duty of the board to exercise a general supervision over the affairs of the bank and to direct and control the action of its subordinate officers in all important transactions. * * * * They invite the public

to deal with the corporation and when any one accepts the invitation, he has the right to expect reasonable diligence and good faith at their hands, and if they fail in either they violate a duty they owe not only to the stockholders but to the creditors and patrons of the corporation." *" United Society* v. *Underwood,* 9 Bush., 609.

The directors of a banking or other corporation are, in the management of its affairs, only trustees for its creditors and stockholders and are bound to administer its affairs according to the terms of its charter and in good faith. If they fail in either respect they are liable to the party in interest who is injured by it for a breach of trust and may be made to account with him in a court of chancery." *Bank* v. *St. John,* 25 Ala., 566.

Carrying the principle still farther, VALENTINE, J., delivering the opinion of the court in *Bank* v. *Wulfekuhler,* 19 Kans., 60, uses this language: " While we assume as a matter of fact that the defendant knew nothing of the condition or management of said bank and nothing of the condition of Herman's account with the bank, yet still as a matter of law, we must presume that he knew all about these matters. He was a director and the vice-president of the bank, and it was his duty to have such knowledge, and therefore the law will conclusively presume that he had it."

But the aspect in which the case is presented to us involves the imputation of bad faith in the defendant in countenancing the exercise of corporate privileges by Simonton without compliance with the terms on which they are conferred, and giving thereto the endorsement of his own official position, by means whereof the plaintiff was induced to confide his money to the keeping of Simonton, and has lost it. If this connection between them subsists, then the declarations and acts of the latter in the furtherance of the common purpose are competent against either.

" In the case of the charge of a combination to defraud,"

remarks a recent writer, " the declarations of each of the parties to such combination, relating thereto, are evidence against the others though made in the absence of the latter, provided the parties were at the time of the declarations in the furtherance of the common design.   *   *   *   *   Slight evidence of collusion or concert is sufficient to let in the declarations of one of the parties as evidence against all, but there must be some evidence of the combination." Big. on Frauds, 483, 484.

The same doctrine will be found in most of the text books on evidence.   Greenl. Ev., 111 ; Abb. Trial Ev., 190 and 621 ; *State* v. *George*, 7 Ired., 321.   These general statements of the law remove the objections to the testimony and show that upon slight proof of an illicit combination, the acts and declarations of each in promoting its success should be allowed to go to the jury who are to determine as well the existence of the combination as its nature and extent.

To the suggestion that the defendant did not supervise the operations of the bank and knew nothing of its condition, the answer is obvious that he voluntarily assumes a position the obligation of which demands this of him, and persons dealing with the bank may reasonably expect his faithful discharge of that obligation, and if he bestows no attention on the business, it is his own neglect from which others should not suffer.   But the prominent feature in the transaction is his assenting to be held out to the world as the chief officer of a corporation which has no legal being and of which, if he had not, he ought to have had, knowledge before lending his name in furtherance of its object.

The instructions to the jury in our opinion properly presented the question of the defendant's liability, and is in harmony with the views already expressed.   Nor can the defendant complain of the refusal to charge that such liability did not exist if the defendant supposed himself to be the president of a legally constituted bank.   His assump-

tion of the office of president is a positive act, the conse-quences of which he cannot evade by his failure to inquire into the existence and character of the organization of which he becomes the head. This is equivalent to a direct en-dorsement, challenging the confidence of all, who knew of his own superior business qualifications, in the institution supposed to be under his care.

It is not an act of good faith to accept the place with its attendant responsibilities without making the proper en-quiries and thus knowing the real condition of this patron-ized applicant for public favor and for business, and the publication of his name with his concurrence is a direct sanction to the enterprise itself.

The remaining exception is to the direction as to the damages, and is equally untenable. If the defendant's legal undertaking was collateral and subsidiary the damages would consist in the money actually lost, that is, the entire sum less that receivable in the distribution of the assets by the receiver.

But the obligation is direct and original, as is that im-posed on Simonton himself, because of his participation in giving the bank credit and inducing the plaintiff to make his deposits. The plaintiff remits the excess of the dam-ages found by the jury above those claimed in the complaint, and thus removes the effect of the variance.

There is no error, and the plaintiff will have judgment for the residue and unremitted part of the verdict.

No error. Affirmed.