GEORGE C. BUSH v. THOMAS S. SPRAGUE, HENRY S. SPRAGUE, EDWARD P. SPRAGUE, CHARLES J. HUNT AND THEODORE S. DAY.

*Statute of frauds—Representations as to business credit.*

The refusal of a motion to strike out testimony of oral representations as to the credit of a third person, and of a request to charge that no recovery can be had on such representations, is sufficient to raise the question, on error, whether, under the Statute of Frauds, such representations will sustain a recovery.

The Statute of Frauds in forbidding any action to be based on unwritten assertions of the business credit of a third person (Comp. L. § 4701) does not apply to a case in which defendants are charged with conspiring to form a corporation for the purpose of defrauding plaintiff and with carrying out their fraudulent purposes by a course of dealing tending to make him believe the alleged corporation to be of good credit.

Representations concerning the credit of a corporation are within the statute of frauds. Comp. L. § 4701.

Testimony that supports any valid count of a declaration cannot be ruled out on a mere objection to its general materiality; and in the absence of any other objection to such testimony than that it will

not support the action at all, a general verdict based on it will be good if there is any count to which the testimony applies, and if no request was made to limit its application to the proper count.

Error to the Superior Court of Detroit.   (Chipman, J.) April 24.—June 20.

CASE.   Defendants bring error.   Affirmed.

*Atkinson & Atkinson, Conely, Maybury & Lucking* and *John Atkinson* for appellants.  A promise by a stockholder to pay a corporation debt is in every sense a promise to pay the debt of another; the corporation is in law a different person from any of its members: *Hanson v. Donkersley* 37 Mich. 186; *Rust v. Bennett* 39 Mich. 521; where one partner makes false statements concerning the credit of his own firm, he is not liable unless the statements are in writing signed by him: *De Vaux v. Steinkeller* 6 Bing. N. C. 84; Benj. Sales 355; false representations by an agent of an insurance corporation concerning its ability and solvency, are within the statute, and must be in writing, even though it is alleged that his object was to secure his own commissions as agent: *Wells v. Prince* 15 Gray 562; the motive of defendant is immaterial: *Kimball v. Comstock* 14 Gray 510; *Mann v. Blanchard* 2 Allen. 386; Browne on Frauds § 184; no action can be maintained against the treasurer of a corporation for false oral statements as to the credit and ability of the corporation, though made in order to induce the plaintiff to receive a note signed by the defendant as such treasurer: *McKinney v. Whiting* 8 Allen 207.

*Chas. M. Swift* and *Otto Kirchner* for appellee.   The original English statute forbidding actions upon representations of credit, unless in writing, limited its application to such representations as were made for the purpose of obtaining credit, and the construction in Massachusetts of the statute from which the Michigan enactment is copied, is the same: *Norton v. Huxley* 13 Gray 285; *Medbury v. Watson* 6 Met. 246; *Wells v. Prince* 15 Gray 562; and

see *Hunter v. Randall* 62 Me. 423; *Stiles v. White* 11
Met. 356; *Haslock v. Fergusson* 7 Ad. & El. 94; directors
and others causing or permitting false statements of fact
to be published in prospectuses of their corporations are
liable to all persons deceived thereby: *Morgan v. Skiddy*
62 N. Y. 319; *Clarke v. Dickson* 6 C. B. (N. S.) 453; *Cross
v. Sackett* 6 Abb. Pr. 247; *Fenn v. Curtis* 23 Hun 384;
*Vreeland v. N. J. Stone Co.* 29 N. J. Eq. 188; *Lincoln v.
Claflin* 7 Wal. 132; *Morse v. Swits* 19 How. Pr. 276;
*Cazeaux v. Mali* 25 Barb. 578; *Shotwell v. Mali* 38 Barb.
445; *Bedford v. Bagshaw* 4 H. & N. 538; *Paddock v.
Fletcher* 42 Vt. 389; *Teague v. Irwin* 127 Mass. 217.

[MINORITY OPINION, STATING THE CASE.]

GRAVES, C. J. The plaintiff instituted this action to
recover $2000, which, as he alleged, had been obtained
from him by the fraud of the defendants. As he proceed-
ed on two grounds he employed two counts, and in order
to see how these grounds differ in matter of substance, it is
needful to recur as briefly as may be to the essential ingre-
dients of these counts. They are very long, and evince
much scientific elaboration.

The first count begins by averring that on the 1st of
April, 1879, the defendants, devising, contriving and wick-
edly combining to deceive the plaintiff and to obtain from
him $2000 in money, and to cheat and defraud him of the
same, did fraudulently enter into a conspiracy to the end
aforesaid, and thereupon and in furtherance of such con-
spiracy said Thomas S. Sprague, Edward P. Sprague,
Charles J. Hunt and Theodore S. Day did organize a cer-
tain corporation, called "The Condensed Oil Manufactur-
ing Company," and made said defendant Thomas S.
Sprague, president, said defendant Charles J. Hunt, vice-
president, said defendant Edward P. Sprague, superintend-
ent, and said defendant Theodore S. Day, manager, and
caused articles of association of said corporation to be filed
in the office of the county clerk for the county of Wayne,
and in said articles did falsely, fraudulently and knowingly

cause to be set forth that the capital stock was $50,000, of which $15,000 was actually paid in; when, in fact, as defendants well knew, the corporation had no capital stock, and no amount had been actually paid in.

This first and introductory averment is followed by a number of distinct charges of fraud alleged to have been committed in pursuance and in furtherance of the said conspiracy, and they are in substance as follows: (2) That the defendants fraudulently caused to be published in the city directory that the corporation had a capital of $50,000, when it had none, and its debts exceeded its assets; (3) that defendants procured the defendant Isaac N. to fraudulently represent to the plaintiff, which he did, that the business of the corporation was very lucrative and yielding large dividends; that he, said Isaac N., owned fifty-six shares, and had invested $1400 in capital stock; that the corporation was solvent and doing a paying business; (4) that defendants procured defendant Edward P. to represent to the plaintiff and to the plaintiff's son, with intent that it should be repeated by the son to the plaintiff, that the corporation was doing a large and lucrative business, and was solvent, and earning large profits and more than two hundred per cent. on sales, and that since the organization the sales in the state of New York had exceeded $10,000; that the corporation had a secret process for the manufacture of leather dressing, invented by said defendant Edward P., which was worth $10,000, and that it would be for plaintiff's profit to invest his money in the corporation stock, and that the shares were worth $25 each; (5) that defendants procured defendant Day to represent to the plaintiff that a written statement produced was copied from the corporation books, and showed the true financial condition of the corporation, and that such statement made it appear that defendant Thomas had invested in the corporation $2900, the defendant Isaac N. $1400, the defendant Day $1000, one Elizabeth H. Day $2449.39; that bills receivable and accounts due amounted to $14,377.44; that the stock and fixtures were worth $2500; that bills payable and debts

owed did not exceed $4698; that since the organization the corporation had made a profit of $4054.24, and that the shares were worth $25 each, and said Day guaranteed that they would pay a dividend of at least ten per cent. a year; (6) that the defendants, by word of mouth, signs, and tokens, by statements in writing, and by other means, represented to the plaintiff that the corporation was solvent and doing a profitable business, and that its shares were worth $25 each; (7) that defendants concealed from the plaintiff and suppressed the true condition of the corporation, and that in this and in all the other fraudulent practices it was the defendant's object to cheat the plaintiff out of said $2000, and induce him to invest it in the capital stock of the corporation; that he relied on said representations and appearances, and paid to said Day, as the manager of said corporation, the sum of $2000, as "the nominal par value of shares of stock of said corporation, which said sum was received and kept by the defendants;" (8) that, in order to prevent the plaintiff from inquiring and finding out what was the truth and from getting back his money, the defendants procured the defendant Edward P., in January, 1880, to represent to the plaintiff and to his son, with intent that said son should repeat it to the plaintiff, that the corporation had declared a dividend of thirty per cent., which had been carried to the surplus account; that the corporation was then making large gains and profits, and doing a lucrative business; (9) that on the 23d of November, 1881, the defendants Hunt, T. S. Sprague, and Edward P. Sprague being directors, ordered the giving of a chattel mortgage on all the assets to the defendant Henry S., in trust for the defendants Thomas S. and Charles J. Hunt, to secure certain pretended indebtedness from the corporation to them, when in fact there was no such indebtedness.

The second count avers: *first*, that the corporation was constituted on the 1st day of April, 1879, by certain of the defendants, and that the defendant Thomas was made president, the defendant Hunt vice-president, the defendant

Edward P. superintendent, the defendant Day, manager, and the defendant Henry S. Sprague secretary, and that on September 1st, 1879, and January 1st, 1880, and at various other dates and times between said dates, the defendants, devising, contriving and wickedly combining to deceive the plaintiff and obtain from him $2000, and to cheat and defraud him of the same, and with a common design to that end, did falsely, fraudulently, and knowingly represent to the plaintiff that the corporation was solvent and had a capital stock of $50,000, of which $15,000 had been actually paid in; that it was doing a lucrative business and paying large dividends.

Following this first averment several distinct acts of fraud are charged as having been committed in furtherance of the common design, and they may be summarized as follows: 2d. That defendant Isaac N., with the connivance of the others, falsely, fraudulently and knowingly represented to the plaintiff that the business of the corporation was lucrative; that large dividends were being paid; that he, Isaac N., owned fifty-six shares, and had invested $1400 in the capital stock; that the corporation was solvent and doing a paying business. 3d. That the defendant Edward P., with the connivance of the others, and in furtherance of the common design, did falsely, fraudulently, and knowingly represent to the plaintiff's son, with intent that he should repeat it to the plaintiff, and also represented directly to the plaintiff, that the corporation was doing a large and lucrative business, was solvent, and earning more than two hundred per cent. on sales, and that sales in the state of New York since the organization had exceeded $10,000; that the corporation was possessed of a secret process for the manufacture of leather dressing, invented by said Edward P., which was worth more than $10,000, and that it would be very profitable for the plaintiff to invest his money in the capital stock, and that the shares were worth $25 each. 4th. That the defendant Day, with the connivance of the others, etc., did represent to the plaintiff that a certain written statement produced to the

plaintiff was copied from the corporation books, and showed the true financial condition of the corporation, and that such statement made it appear, etc. (as set forth in the first count); and the plaintiff, relying upon all of said representations, was induced thereby to purchase of said corporation eighty shares of the capital stock, and was thereby induced to pay, and did pay, for said shares of stock to the said corporation and to defendants the sum of $2000.

Isaac N. Sprague was acquitted, but the jury found against the others generally, and on the whole record. The recovery was not confined to either count. The defendants allege error.

Whatever evidence there was of representations claimed to be false and fraudulent was either oral or not signed, if in writing. This was admitted at the trial, and has not been questioned at the bar. The consideration of importance is whether this recovery, based on such representations,—on representations not written and signed,—can be supported. That the question is fairly raised, is conceded on the part of the plaintiff. A motion to strike out the testimony and a request to charge on the subject were respectively refused. The question depends on a provision of the statute of frauds, which reads as follows:

" No action shall be brought to charge any person, upon or by reason of any favorable representation or assurance made concerning the character, conduct, credit, ability, trade, or dealings of any other person, unless such representation or assurance be made in writing, and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorized." Comp. L. § 4701.

The parties are at issue respecting the application of this provision, the defendants alleging that it applies, and the plaintiff insisting to the contrary. The occasion of this statute, in connection with the decision of the King's Bench in 1789, in the case of *Pasley v. Freeman*, is familiar to the bar, and no observations on the subject are called for. The regulation rests on the same high ground of policy as that which requires a signed writing as evidence of a guar-

anty. And as in that case, so in this, tne construction and application ought to be favorable, and in furtherance of the object, and not restrictive or unfriendly. It is not necessary that the " other person" spoken of should be a natural person. An artificial person is equally within the meaning of the statute. Comp. L. § 2, subd. 12; *Devaux v. Stein-keller* 6 Bing. N. C. 84; *Boyd v. Croydon Ry. Co.* 4 Bing. N. C. 669; *McKinney v. Whiting* 8 Allen 207; *Rust v. Bennett* 39 Mich. 521; *Pharmaceutical Soc. etc. v. London etc. Ass'n* 4 Q. B. Div. 313; *People v. May* 27 Barb. 238; *British etc. Ins. Co. v. Com'rs of Taxes* 31 N. Y. 32; *People v. Utica Ins. Co.* 15 Johns. 381; *People v. Rector* 22 N. Y. 44; 2 Add. on Torts § 1179. Hence, if the representations are in such relation to the "Condensed Oil Manufacturing Company" that the case would be governed by the statute if the company were a natural person, the fact of its being an artificial one will make no difference.

The diversity in substance between the two counts demands notice.

The first alleges that the defendants entered into a conspiracy to perpetrate the fraud, and then sets forth the acts and things which were employed to advance and execute the conspiracy.

The second count alleges merely that the defendants united in committing the fraud, and not that they previously conspired together to effect it.

While this distinction is not devoid of consequence, it does not affect the present question. Conspiracy is not the ground of these actions on the case. The cause of action does not result from the conspiracy, but from the thing done and the damage flowing from it. Here, it is the fraud and damage. Conspiracy, by reason of the connection it involves among the conspirators, may cause individuals to be responsible, who, but for the conspiracy, would not be responsible at all. But unless something is actually done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, and which causes damage, no civil action on the case will lie against any one. *Savile v.*

*Roberts* 1 Ld. Raym. 374; *Tappan v. Powers* 2 Hall 277; *Hutchins v. Hutchins* 7 Hill 104; *Parker v. Huntington* 2 Gray 124; *Bowen v. Matheson* 14 Allen 499; *Kimball v. Harman* 34 Md. 407; *Hauser v. Tate* 85 N. C. 81. It is therefore obvious that a charge of conspiracy to defraud by false representations will not disappoint the statute. The necessity for signed writings is just the same where conspiracy is set up as where it is not. Neither the reason nor the language of the provision will exclude a case on account of the number of wrong-doers, or in consequence of their having acted on a previously concerted plan. As a guard against misconception, it is proper to observe here that there is no intention to say that the second count alleges no conspiracy at all. It may be that the terms amount to a limited charge of that kind.

But, in view of the question which is being considered, there is a much more important distinction between the two counts. The aspect given to the wrong by the first count is that the defendants were exclusively intent on benefiting themselves; that their purpose was to obtain the plaintiff's money for their own use; and that as means to that end they concocted the figure and appearance of a corporation, which was a mere sham, and used it as intended, not only as a lure and decoy, but also as an instrument and agency to transfer the plaintiff's money, through deceptive forms and on a fictitious consideration, to their own exclusive use and advantage. Here the representations are not supposed to have availed anything to the corporation, or to have been so intended. On the contrary, they are deemed to have benefited the defendants and to have been made with that view, and the corporation is treated as having been in itself a false representation, gotten up and used by the defendants as a trick and a fraud. Now it may be conceded that the statute does not apply to such a case, because the corporation, which is the only one to be an "other person," cannot, on this state of facts, be regarded in that way within the meaning of the provision. I am, therefore, inclined to think that if the recovery had been confined to the first

51 MICH.—4.

count there would have been no foothold for the present objection. *Hauser v. Tate*, supra, and other cases.

But the second count is framed on a different principle. It contemplates the corporation as a lawful entity, and not as a false and fraudulent device gotten up for the very purpose of effecting a cheat, and it regards the representations as aimed to fraudulently exalt the credit and ability of this entity, with intent that the plaintiff should trust it and trust in it, and change his property in point of form from cash to so many shares of its stock. The language, in some instances, is not quite as certain as it might have been, but I cannot regard the sense as doubtful. There is no averment that it was the defendants' intent to secure the money to themselves, and the phraseology of the count will not bear that construction. Had it been the purpose to charge such a scheme as that, the pleader would have set forth the way by which the intent was to be carried out. But nothing of the kind appears. Where the defendants are charged with fraudulent conduct to deceive the plaintiff and " obtain " his money, the meaning is that they were to " obtain " it, not for themselves, but for the corporation. It was to become corporate funds; accordingly, no attempt is made to allege an intent or plan by the defendants to get the money from the corporation to themselves. The pleading leaves it in corporate hands. The passage where it is said the plaintiff paid the $2000 to the corporation and to the defendants for eighty shares of the capital stock is subject to the same view. In each case a strictly corporate act is contemplated, and not a separate and individual act of the defendants. An opposite construction would reduce the pleading to absurdity. Such, it appears to me, is the case presented by this second count, and I cannot avoid the conclusion that it is a case to which the statute is applicable. As I view it, it seeks to charge the defendants upon or by reason of favorable representations or assurances made concerning the credit, ability or dealings of the " Condensed Oil Manufacturing Company," and which representations or assurances were neither signed by any of the defendants nor by

any one else.   See 2 Addison on Torts, § 1179 ;   *Wells v. Prince* 15 Gray 562.   And if it be found that it was a part of the purpose, or in substance the whole purpose, of defendants that the credit to be given to the corporation should inure to their immediate or eventual advantage, the effect here must be the same.

The case, under the view thus taken of it, is ruled by *Osburn v. Lovell* 36 Mich. 246.

The jury have returned a general verdict on the representations for the plaintiff, and the court has entered judgment on it.   Admitting that the first count might sustain a verdict on the strength of representations not written and signed, still it is wholly impossible to apply the finding to the first count any more than to the second.   It cannot legally be known, as observed in that case, that the jury would have agreed on the first count ; and it is quite consistent with what appears that some of the panel may have based their conclusion on one count, and some on the other, and that there was no actual agreement on either. If it be said that the case laid in the second count actually includes matter which the statute does not rule, as well as some that it does, the consequence must still be the same. There is no legal ground for saying that the jury relied on one set of facts, and did not rely on another.   It is a reasonable intendment, on the contrary, that they acted on all the facts before them, and no inference is justly admissible that they would have found as they did here if any of the matters had been absent which the court allowed them to consider.

It occurs to add this further observation before concluding.   Suppose it were claimed for the plaintiff, although it has not been, that the articles of association should be deemed as signed within the sense of the statute in question, the position, if true, would not help the plaintiff here.   The whole testimony as to this point, including the articles, was abandoned to a promiscuous application, and was left to be considered under the second count no less than under the first.   But the articles were not prop-

erly examinable at all as evidence of false representations under the second count, because, as already said, the corporation is there presented, not as being itself a fraud and a false representation, but as a body instituted lawfully, and to which the defendants sought to give a fictitious ability and credit. Entertaining the opinion that the Court is bound to view the question discussed as certainly involved, I cannot perceive how the case set forth in the second count can be saved from the ban of the statute without introducing niceties and distinctions never dreamed of by the Legislature, and which will be likely to embarrass, if not impair, the provision in its policy, object and efficacy.

I am not satisfied that there is any other objection in the case of sufficient force to impeach the judgment; but, on account of the point in question, I am compelled to think there should be a new trial.

CAMPBELL, J. While I agree with the Chief Justice in all the matters in his opinion sustaining the judgment, I do not think that, under the exceptions taken and errors assigned, there is any reason for a new trial. If there was any ground of recovery on either count, the court presented the matter very fairly to the jury, and we are not concerned with the facts.

It cannot be well argued, or at least the argument is not tenable, that the count which set up the purpose of the fraud to put money into defendants' hands is within the statute requiring representations to be in writing. There was evidence going to prove such a purpose, and enough for the jury to act upon. Assuming—which, however, I do not assent to—that in such a case as this the other count could only be made out by written proofs, I do not think that question raised by the record. All the objections, and all the assignments of error, rest upon the theory that both counts stand or fall together. The court was not asked to discriminate between them, and the plaintiff's counsel were not asked to define under which count they offered proofs. When testimony is objected to, not as improper under a

particular count, but as improper generally, it cannot be ruled out if available for any purpose. And when the attention of the trial court is not asked to determine the absence or insufficiency of testimony to support a particular count, and it is claimed generally that the testimony introduced will not support the action at all, the verdict is good if there is any count to which it can be applied. Had the objection been made to the second count alone, the verdict could have been confined to the first by a proper charge ; and under such circumstances it was held in the celebrated case of *Richardson v. Mellish* 3 Bing. 334, 346, that where no attention was called on the trial to a difference between counts, the verdict might be applied to the proper count even after error brought. Our practice does not allow an inferior court to interfere after the removal of the record, but amendments may be permitted by this Court to be made below. And in *Keeler v. Robertson* 27 Mich. 116, we recognized the propriety of conforming the verdict to the judge's notes, where other difficulties did not stand in the way.

In my opinion the question whether a recovery could be had under the second count is not properly raised.

But I do not think the objections taken are well founded on the merits. The statute supposed to be in the way of a recovery is section 4701 of the Compiled Laws, which declares that " no action shall be brought to charge any person, upon or by reason of any favorable representation or assurance made concerning the character, conduct, credit, ability, trade, or dealings of any other person, unless such representation or assurance be made in writing, and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorized."

This statute, which was originally passed in England for the main purpose of preventing the recovery on verbal representations in evasion of the Statute of Frauds then applying to verbal promises to pay the debt of another, and to put promises and representations on a similar footing, has not been as fully settled in its meaning as it might be desir-

able to have it. But it does not seem to me to have been carried so far as defendants now seek to carry it. There have been several cases denying its application to particular facts, and confining it to the specific matters of "character, conduct, credit, ability, trade, or dealings" directly and not by remote inference. In *Lyde v. Barnard* T. & Gr. 250, Alderson and Parke, barons, were decidedly of opinion that particular facts were not covered, while Abinger and Gurney thought differently. In *Swann v. Phillips* 8 Ad. & El. 457, it was held that a particular fact stated not only as a reason, but asserted as a single and sufficient reason, why credit might safely be given, was within the statute, because coupled directly with a recommendation, so that if made in writing no further words would make it more complete. This case appears to harmonize some of the conflicting decisions.

But while the statute should be given all reasonable effect, it ought to be confined to such cases as fall fairly within it. It could not have been designed to furnish convenient covers for fraudulent conspiracies not manifestly within its terms.

In the first place, so far as we have found cases on the subject, it has not been extended to any case where there were not such representations made as were capable of being reduced to writing. And such acted fraud and by-play as produce false impressions more by action than by words, cannot be covered by the statute.

In the next place, no case has been discovered where the representation made by a single person is not so complete as, unaided by other persons' acts or representations, to be fraudulent in the direction of raising false credit. It is easy to see that different persons might each make single representations in writing over their signatures, which combined would work the grossest frauds, but which as separate papers would be harmless, so that no action could lie upon them at all.

It is further apparent in the same connection that the very fact that several persons of apparent respectability act

as associates, and make similar representations which differ enough to make them not legally identical, is a very powerful auxiliary to any fraud they see fit to adopt. Conspiracy is in itself an efficient means of carrying out any wrong design, and in my opinion it does not require written articles to make it actionable, if damage is done by it.

In the case before us the conspiracy of several persons, not expected to join in the separate representations complained of, is the real grievance indicated by the record. As already suggested, we have nothing to do with the inferences reached by the jury, and we must accept them as binding us. Here, then, is a case where the fraud was claimed to have been begun by the signing and filing of false assertions in the articles of association,—which, it may be remarked, would, thus far at least, bring the case within the terms of the statute, and justify the court in refusing, as it did refuse, to charge that there was no evidence of false representations written and signed. Following this were a series of transactions, partly in writing and partly in parol, which, if wrongly intended, were swindling performances, designed to create false appearances, but not easily convertible into words. Then came detached interviews by different persons, and conversations, which, if fraudulently meant, were not meant to be in such a shape as to be reducible to exact words, and could only be substantially remembered. The defendants, if implicated, as the jury found they were, in these transactions, must have been so because engaged in the same general purpose, and not because they ever authorized the precise words to be spoken, and the precise things to be done throughout, which are now relied on.

If we hold the statute applicable so strictly as is claimed here, and hold that all unwritten representations must be disregarded, it needs very little reflection to see that the statute would operate as a most convenient cover for fraud, and could seldom fail to further it. And I am not prepared to hold that it reaches the multifarious contrivances of conspirators, or any cases where the fraud is not con-

fined, at least substantially, to tangible verbal misrepresentations in which the defendants unite. Wherever any substantial gain accrues to the wrong-doers by the machinery of conspiracy, it cannot be said that the parties sued are charged upon mere representations or assurances. Neither can this be said where they have acted in concert, but by each one's choice of means, verbal or acted, to reach damaging results to the party defrauded. If mere words are sued upon, the words may come within the statute. But if they are but a part of the evil machinery I cannot think the statute meant that they should lend cover to the fraud.

I think the judgment should be affirmed with costs.

COOLEY, J. I agree with the Chief Justice in the view he takes of the application of the Statute of Frauds to this case. We all agree, I think, that the first count in the declaration sets out a case not within the statute. It may, therefore, be supported by evidence of acts and representations not evidenced by writing.

I am not satisfied that any evidence was given on behalf of the plaintiff which was not admissible under the first count. There was, therefore, no error in receiving it; and the error which is to reverse the judgment must be found, if anywhere, in the instructions to the jury, or in refusing to give instructions.

Error is not assigned on instructions actually given, but complaint is made that the trial judge refused nine several requests for instructions. One of these asked instruction for acquittal of three of the defendants; seven of them related to the evidence, and so far as they were correct seem to me to be covered by the charge which was given. The other is as follows: "Inasmuch as none of the alleged representations were in writing and signed by any of the defendants, the plaintiff cannot recover." This request, it is evident, could not have been given without error if one count of the declaration is good and is supported by the representations proved.

The trial judge no doubt ought to have restricted the

recovery to one count of the declaration, but no request to that effect was made and no error is assigned on the failure to do so. If, therefore, it was erroneous to receive verdict and enter judgment on both counts when the evidence supported one only, we have no concern with it, for we review only the actual rulings of the trial judge to which exception was taken, or on which error is expressly assigned. We have no general jurisdiction to correct all the faults we may think we discover in the record.

It is to be observed that this is not a case of a verdict on two counts, one of which is bad; for both counts are sufficient on their face, and the defect is one of proof only. If the result is a hardship to the defendants, it is to be regretted; but it is not likely that if the defense considered the plaintiff's case weaker on the first count than on the two together, they would have failed to ask instructions distinguishing between the two. Probably the differences in the two counts had no influence on the deliberations or verdict of the jury, and would have had none if they had been instructed that the evidence must be applied to the first count exclusively.

I think the judgment should be affirmed.