## HARRY HUBBARD v. HARRY W. LONG.

*Fraudulent representations — Evidence — Variance — Statute of frauds.*

1. In an action for fraud in inducing plaintiff, by false representations as to its value, to purchase corporate stock, evidence of the breach by the defendant of a promise made to the plaintiff as a part of the inducement to such purchase is inadmissible.

2. The declaration averred that the defendant was the owner of the stock purchased; that plaintiff purchased it from him, and paid therefor to him the sum of $500. It appeared from the evidence that the stock which the plaintiff received was unissued stock of the corporation, in which the defendant had no interest except as a stockholder, and that he never received personally any portion of the purchase money, but that the same was paid directly to the bookkeeper of the corporation. And it is held that there was a fatal variance between the proofs and the averments of the declaration.

3. Representations by a stockholder that he is the owner of certain shares of the corporate stock, and that the corporation is paying large dividends, made for his own benefit to induce the party to whom they are made to purchase said stock, are not within How. Stat. § 6188, which provides that "no action shall be brought to charge any person upon or by reason of any favorable representation or assurance made

concerning the character, conduct, credit, ability, trade, or
dealings of any other person, unless such representation or
assurance be made in writing, and signed by the party to
be charged thereby, or by some person thereunto by him law-
fully authorized."

Error to Kent. (Adsit, J.) Argued April 27, 1894.
Rehearing on briefs ordered December 18, 1894.  De-
cided May 28, 1895.

Case.  Defendant brings error.  Reversed.  The facts
are stated in the opinion.

*More & Wilson,* for appellant.

*Frank L. Carpenter (Turner & Carroll,* of counsel), for
plaintiff.

LONG, J.  The Grand Rapids Parlor Furniture Com-
pany, in November, 1890, was a corporation engaged in
the manufacture of parlor furniture in Grand Rapids,
having an authorized capital of $50,000, with $21,000 paid
in.  William J. Long, Jr., defendant's brother, was presi-
dent, and defendant was secretary and treasurer, of the
corporation.  The company, prior to November, 1890, had
been engaged in the wholesale business exclusively, and
had its place of business on the west side of Grand river.
Defendant claims that early in 1890, with a view of ex-
tending its business, and engaging in retail as well as
wholesale trade, the company engaged to have a block
built on Canal street, on the east side of the river, and
moved into its new quarters on November 1, 1890.
Thomas M. Peirce was bookkeeper, and afterwards vice
president, and held $5,000 of its stock; all the rest of the
stock being held by William J. Long, Jr., Harry W. Long,
and Margaret B. Long, the latter's wife.

Plaintiff resided at Grand Rapids, was a musician, and
at times a saloon keeper and bartender.  He had accum-
ulated about $500.  He met the defendant upon the
streets of Grand Rapids in October, 1890, and was spoken

to by him about going into the employ of the company. Several talks followed, in which, plaintiff claims, the defendant falsely and fraudulently induced him to enter the employ of the company, and to purchase $500 in shares of the capital stock of the company.

The averments in the declaration are substantially that the defendant represented that the policy of the company had been to keep the ownership of stock among the members of defendant's family and a few of the employés of the company, thereby giving such employés the motive of self-interest to increase their faithfulness; that he offered these shares to plaintiff because he believed plaintiff had great talent for selling the manufactured products of the company; that the business of the company had been prosperous, and was constantly getting better; that its facilities for business were being perfected and enlarged to keep pace with the demand for its product; that the company had paid annual dividends from the time of its organization, which dividends had never been less than 22 per cent., and the prospects were that the dividend for 1890 would be in excess of 22 per cent.; that the stock was worth more than its par value, and had never been sold for less; that none of the stockholders wished to sell any of their stock, except as aforesaid; that if plaintiff would purchase 20 shares at the price of $500 (that being their par value), and would enter the employ of the company, he (defendant) would put plaintiff in charge of the packing and shipping department of the company, at a salary of $8 per week, and would teach him all necessary details of the business, whereby to fit him for the occupation of traveling salesman for the company, and, when he had acquired such fitness, would employ him as such salesman at a salary of $25 per week and expenses, and would raise his salary from time to time as plaintiff developed ability for making sales, by which means he would acquire a more profitable and better kind of business than the one followed by him, and where he would

receive an income of at least 22 per cent. on his investment, and probably much more.

It is averred that plaintiff, believing and relying upon these representations, was induced to abandon his calling as a musician, pay $500 for 20 shares of stock, and enter into the employment of the company, while in truth and in fact such representations were false, and known to the defendant to be false, and that they were made with intent to cheat and defraud the plaintiff. Plaintiff further. avers that the financial affairs of the company were in a ruined state, and that the business it was then and had been doing was not prosperous, but was being conducted at a loss to the company; that it had never paid a dividend of 22 per cent. out of its profits, or from any other source, and had never paid a legitimate dividend; that the liabilities of the company amounted to more than the commercial value of its assets, and that the company had many liabilities then due which it was unable to pay; that said stock had no commercial value whatever, but was absolutely worthless; and that a large portion of its stock had been previously sold for 20 per cent. of its face value, all of which defendant then well knew.

The plaintiff further avers that the false and deceitful representations aforesaid, and the promise to give him employment, and teach him the details of the business to enable him to act as traveling salesman at a salary of $25 a week and expenses, and to raise his salary as he acquired skill, and to pay him 22 per cent. upon his investment, were cunning and deceitful devices to induce him to abandon his calling as a musician, whereby he earned large wages, and enter the employ of the company, and to pay to said defendant the sum of $500 for 20 shares of worthless stock, the defendant never intending to fulfill said promise, and never did fulfill the same; that plaintiff entered upon such employment at $8 per week, and continued for 30 weeks, performing his duties faithfully, until the factory of the company, and its sales

room, were closed by its creditors and its business ended; and that he received nothing therefrom.

This suit was brought to recover damages for the false representations. Plaintiff had verdict and judgment on April 29, 1892, for $616.10. On the trial the court permitted the plaintiff to show, as a part of his damages, the loss he sustained in his salary not having been at the rate agreed upon; but subsequently the plaintiff remitted, upon the record, the amount he claims was so erroneously included, being the sum of $71.85. The judgment therefore stands at $544.25, which is the amount of money paid for the stock, with interest on such amount, at 6 per cent., from the time it was paid to the time of the entry of judgment.

On the trial, plaintiff gave evidence tending to support the claim made by the declaration. The defendant denied these statements, and insisted that plaintiff asked for a position with the company, saying that he had quit the saloon business, and was anxious to get into a respectable occupation, and that he had some money which he would invest in the company if he could secure a situation; that the company made some inquiries about him, and finally hired him as a shipping clerk at $8 per week, with the understanding that when he should be competent to sell goods on the road he should be given the position of traveling salesman. Defendant also testified that he told plaintiff that the company had not made any money for some time, as it had lost heavily by fires; that the company was about to move into new and expensive quarters, and enter the retail trade, and try to largely increase its business; that the expense of moving and getting started in new quarters would be large, and that no dividends could be expected for a year, but that he would be glad to have the plaintiff take some stock, if he entered the company's employ, as it would give him an incentive to work. Defendant also testified that he did not offer his own stock for sale to plaintiff, but told him that the capital stock of the company was

not all paid in, and that he could buy some of that; and defendant now insists that the proofs conclusively show that it was such stock that plaintiff purchased, and that defendant never received personally any portion of the moneys so paid. The officers of the company testified that at the time plaintiff purchased his stock they considered the company in good condition, and the prospects for business very flattering. Defendant, although secretary of the company, was not a bookkeeper, and had nothing to do with keeping the books, and he testified that he relied entirely upon the statements of the bookkeeper for information about the financial condition of the company. Mr. Peirce, an experienced bookkeeper, in September, 1890, purchased $5,000 of the stock of the company. He testified that, before purchasing, plaintiff came to the office, and inquired of him whether he thought it a good thing for him to go into, and he (Peirce) told him he thought it was all right.

The assignments of error relate to the admission and rejection of testimony, the charge of the court, and the refusal of the requests to charge.

The court permitted the plaintiff to introduce evidence for the purpose of showing, not only that defendant misrepresented the value of the stock, but also that he failed to give plaintiff such employment as he promised. He was allowed to show that defendant did not give him the instructions agreed upon to fit him to go upon the road as a traveling salesman, or give him the position as traveling salesman, and plaintiff was also permitted to show what wages he had been earning as a musician. It is contended, however, that this was not prejudicial error, for the reason that there had been remitted from the judgment the amount at which these damages had been allowed. The action was for fraud in inducing him, by fraudulent means, to purchase the stock, and anything which was a part of such inducement was competent, under plaintiff's claim, but further than that the plaintiff should not have been permitted to go. Very natur-

ally, the defendant's case would be prejudiced by the showing that defendant did not keep his promise to make plaintiff a traveling salesman, and increase his wages to the $25 per week, yet the failure to do so was no part of the inducement to making the purchase of the stock. The rule, as stated by Cooley, Torts, 486, is that—

"If deceit, in order to be actionable, must relate to existing or past facts, it is evident that the fact that a promise, made in the course of negotiations, is never performed, is not of itself either a fraud, or the evidence of a fraud."

The court was in error in permitting the plaintiff to show a breach of this promise, or what the plaintiff had been earning before the time of the purchase of the stock.

The declaration alleges that the defendant was the owner of the stock purchased, and that plaintiff purchased the same from him, paying therefor to him the sum of $500. It appears that the arrangement for the purchase was made with the defendant, but the money was paid directly to the bookkeeper of the furniture company, and defendant never received personally a dollar of the purchase price. The fact appears conclusively that the stock which plaintiff received was unissued stock of the company, and which the defendant never possessed. All the interest he had in it was as a member of the company. Defendant insisted below, and now insists, that this was a fatal variance, as there was no proof to support the averment of the declaration that plaintiff purchased stock from the defendant, and paid him for it. The defendant asked the court to charge the jury that the verdict must be for the defendant if they found that the plaintiff purchased his stock from the company, or if they found that plaintiff paid the company for it, and the company received the benefit of such payment. This was refused, and the court charged the jury:

"It is immaterial to whom the stock belonged, or who received the money which the plaintiff paid therefor. The real question is, did the defendant actually make the

representations charged, were they false, and did the plaintiff have a right to rely, and did he rely, on the statements so made, and suffer damages thereby?"

It is contended by defendant that this instruction was erroneous for two reasons:

1. That there was a fatal variance between the declaration and the proofs.

2. That defendant cannot be held for verbal representations about the condition of the Grand Rapids Parlor Furniture Company, because they are within the statute of frauds.

We think there was a fatal variance between the proofs and the averments of the declaration. Instead of the plaintiff purchasing the defendant's stock, and paying him therefor, he purchased the company's stock, and paid it for the same, and the defendant never received a dollar of the money, or any benefits therefrom, except as he was benefited as a member of the company. This action was for fraud, and especially in this class of cases must the proofs support the declaration. *Collins v. Jackson*, 54 Mich. 186; *Jones v. Kemp*, 49 Id. 9; *Batterson v. Railway Co.*, 49 Id. 184; *Cowan v. Railway Co.*, 84 Id. 583.

But aside from this variance, which we regard as fatal, it is contended that the representations, if made, come within the statute of frauds. How. Stat. § 6188. Upon the defendant's contention, this would evidently be correct. *Bush v. Sprague*, 51 Mich. 41. But the plaintiff contends that the defendant represented that he was the owner of the stock; that such representations were made to induce the plaintiff to purchase; that the defendant was intent on benefiting himself, and as a means he represented himself to be the owner, and the corporation paying large dividends. Under the rule in *Bush v. Sprague, supra,* the case would not come within the statute if the plaintiff's contention is found to be true. That was a question for the jury, and should have been submitted to them.

Judgment reversed, and a new trial granted.

The other Justices concurred.