NEWMAN v. LYMAN et al.

(Court of Civil Appeals of Texas. Amarillo. March 7, 1914. Rehearing Denied April 4, 1914.)

1. FRAUDS, STATUTE OF (§ 38*)—FALSE REPRESENTATIONS—APPLICATION OF STATUTE.

Rev. St. Mo. 1909, § 2785, providing that no action shall be brought to charge any person by reason of any representations made concerning the credit, ability, or dealings of any other person, unless such representations be in writing, and subscribed by the parties charged, would not apply to representations made by defendant as to the solvency, etc., of a corporation whose stock he sold to plaintiff, where defendant owned the stock, and by means of the sale also secured the release of his own personal liability on commercial paper.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 60; Dec. Dig. § 38.*]

2. CANCELLATION OF INSTRUMENTS (§ 45*)—ACTIONS—BURDEN OF PROOF.

In an action to have a transfer of notes by plaintiff in consideration of corporate stock declared fraudulent, and to have the notes surrendered, or, in the alternative, for a personal judgment against defendant for damages from fraudulent representations in inducing plaintiff to buy the stock, the general rule as to the burden of proof in fraud cases applies.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 100, 101; Dec. Dig. § 45.*]

3. FRAUD (§ 22*) — MISREPRESENTATIONS — DUTY TO DISCOVER.

One who undertakes to discover the truth of representations made to him is charged with knowledge of everything which a proper investigation would disclose, and would not be justified in acting upon fraudulent representations merely because they were made to him.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 19–23; Dec. Dig. § 22.*]

Appeal from District Court, Hemphill County; F. P. Greever, Judge.

Action by A. M. Newman against H. E. Lyman and others. From a judgment for defendants, plaintiff appeals. Affirmed.

H. E. Hoover, of Canadian, for appellant. Fisher & Palmer, of Canadian, for appellees.

HALL, J. Appellant, plaintiff in the court below, filed this suit against H. E. Lyman.

Charles L. Berner, W. I. Burney, A. M. Jines, John A. Ross, Richard Todd, Carl Loui Lundquist, and Thomas F. Moody, alleging in substance that on the 8th day of February, 1911, he was the owner of certain vendor's lien notes upon certain lands in Ochiltree county, Tex., said notes, principal, and interest aggregating $2,589.40; that on and prior to said date the defendant Lyman was secretary of the Manufacturers' Brokerage Company, a corporation existing under the laws of the state of Missouri, and that defendant Berner was "a kind of real estate shyster" in and around Topeka, Kan., and was a friend and "stool pigeon" of the defendant Lyman; that on and prior to said date defendant Lyman, in Kansas City, approached the plaintiff to sell him certain shares of stock in said brokerage company, and represented to plaintiff that the company had a paid-up capital of $100,000, and was engaged in a prosperous business, and making money, and that the defendant Berner was a responsible banker located at Topeka, Kan., and largely interested in the corporation; that the corporation was not only in a flourishing condition, and a proper investment for money, but was one that would make large returns upon the amount invested. He charges that Berner and Lyman were partners in the transaction; that, if they were not partners, they acted together; that Lyman, in order to sell plaintiff the stock in the Manufacturers' Brokerage Company, represented that the company was solvent, and was doing a good and profitable business, and was in possession of means for continuing the business, and to earn an increased profit as the business grew older, all of which plaintiff relied upon and believed, and but for which he would not have purchased the stock; that in consideration of these statements he purchased certain stock certificates; that the notes above mentioned were transferred direct from the plaintiff to the defendant Berner, although the trade was made with the defendant Lyman. The plaintiff alleged that the representations made to him which induced him to make the trade were false; that the brokerage company was not doing a prosperous business, and in fact had no business at all, and was at that time insolvent; that the representations were fraudulently made for the purpose of cheating and defrauding plaintiff out of his notes; that the stock certificates were alleged and represented to be worth par, but at the time were and still are absolutely worthless; that at said time the company was largely indebted in excess of defendant's estate, and were soon thereafter thrown into the hands of a receiver; that it was unable to pay even 50 per cent. of its indebtedness; that immediately upon learning the real facts in the case he tendered said stock certificates to the defendants, and

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes.

demanded a return of his notes, which was refused; that all of the said notes were unpaid, and still in the hands of defendant Berner. He prayed for judgment against the defendants decreeing the transfer of [the notes fraudulent, and that, if he was not entitled to a surrender of the notes, he have personal judgment against the defendants; they having personally answered in the case. He prayed for rescission of the trade on account of the fraud; that he be decreed to be the owner of the notes; that, upon failure to return the notes, he be awarded a judgment for the amount thereof. By his pleadings he tendered the stock to the defendants. The defendants answered separately. Defendant Lyman answered by general and special demurrers, which were overruled, a general denial and by way of special answer, admitting that he was the active secretary of the brokerage company, and alleging that plaintiff, with one Coutant and R. C. Sowder, were officers and directors of the Cash Buyers' Association, a corporation organized under the laws of Arizona, entered into a contract of writing with the Manufacturers' Brokerage Company, whereby the Cash Buyers' Association was to be paid a commission on all sales made for the brokerage company, and that Newman thereby became familiar with the transactions of the brokerage company. He denied that he approached Newman to sell him the stock, but alleged that Newman approached him to purchase it. He set up certain conversations had with Coutant, and particularly denied the allegations in the original petition. He further alleged that he advised Newman and Coutant that the brokerage company was in need of funds, and alleged that Newman had agreed to pay any funds to the company in order to make the stock valuable. He further alleged that Charles L. Berner was an innocent holder and purchaser of the notes for a valuable consideration. It is further alleged that Newman had ratified the contract of sale, that all the representations were made in the state of Missouri, and governed by the laws of that state, and specially pleaded chapter 29, art. 2, § 2785, of the Statutes of Missouri 1909. Charles L. Berner practically adopted the answer set up by defendant Lyman. The suit was dismissed as to the other defendants. The case was tried before the court, and judgment rendered that plaintiff take nothing by his suit.

The court filed findings of fact and conclusions of law, finding in substance that Newman, together with Coutant and Sowder, on the 23d day of December, 1910, entered into a written contract with Lyman for the purchase of 128 shares of the brokerage company for the consideration of $2,250; that he deposited with Adrain F. Sherman, as a guaranty that they would perform their part of the contract on or before February 1, 1911, certain securities, and that, upon the failure on their part to pay said $2,250, the plaintiff, Newman, placed with the defendant Lyman the vendor's lien notes described in the petition which were sold to defendant Berner; that Newman purchased the shares of stock on the 8th day of February, 1911, and before such purchase defendant Lyman represented to Newman that said stock had a value, and that the brokerage company was a going concern, and had some 400 or 500 customers; that the brokerage company was solvent on the 23d of December, 1910, and on February 8, 1911, having on the first-named date assets to the extent of $12,675.35, liabilities amounting to $8,391.99, and on February 8, 1911, its assets amounted to $10,000, and its liabilities to $6,453.35, but that said company thereafter became insolvent, and went into the hands of a receiver in May, 1911. The court further finds that prior to the purchase of the stock by Newman he had access to the books of the brokerage company, and frequently examined them, making inquiry as to its business, and was in a position to know and did know the condition of the affairs of the brokerage company at the time of the purchase of the stock; that prior to the date of the purchase the brokerage company had some 400 or 500 customers in Missouri, Oklahoma, and Kansas, and Newman was induced to purchase the stock in order to consolidate the brokerage company with the Cash Buyers' Association, for the reasons set out in the written agreement of December 23, 1910. The court further finds that the contract of sale and the representations were made in Missouri, and were not in writing; that the article of the Statutes of Missouri above referred to provides: "No action shall be brought to charge any person upon or by reason of any representation or assurance made concerning the character, conduct, credit, ability, trade or dealings of any other person, unless such representation or assurance be made in writing, and subscribed by the party to be charged thereby, or by some person thereunto by him lawfully authorized"—and that said statute was pleaded as a bar to plaintiff's cause of action; that Berner was an innocent holder of all the notes in controversy, having purchased the same for a valuable consideration before maturity, and without notice of the alleged vice in their execution, delivery, or transfer; that the face value of the 128 shares of stock was $12,800, the purchase price paid by Newman therefor was $2,250; and that the representations as to the stock being valuable did not therefore mean the par value. The court concluded, as a matter of law, that, the representations made by Lyman to Newman being substantially true, plaintiff would not be entitled to a rescission of the contract, but that judgment should be rendered for Lyman against Newman on that issue; that, plaintiff having been induced to purchase the stock in order to consolidate the Manufacturers' Brokerage Company with

the Cash Buyers' Association, and not by reason of the representations of the defendant Lyman, he would not be entitled to a judgment for rescission of the contract, or any of the relief prayed for; that Berner being a bona fide purchaser, was entitled to a judgment against plaintiff, and that plaintiff would not be entitled to any of the relief prayed for as against Berner; that the representations alleged to be fraudulent, having been made in Missouri, and being oral representations, were within the statute of frauds of the state of Missouri above quoted; and that the statute would be a complete bar to plaintiff's right of recovery by reason of such representations.

[1] The first error assigned by the appellants is that the court erred in the fourth conclusion of law outlined above with reference to the effect of the statute of frauds. The case of McKee v. Rudd, 222 Mo. 344, 121 S. W. 312, 133 Am. St. Rep. 529, is cited by both parties as to the effect of the statute upon the representations. The case cited is not perfectly clear in the application of the facts to the law, but holds that the statute applies to representations of incorporators of a corporation made to one extending it credit, and prevents recovery sought by reason of the representations being fraudulent when the representations were not in writing. In our opinion the case is not applicable to the facts presented by this record. The plainest statement of the law relating to the facts under consideration which we have been able to find is in Hubbard v. Oliver, 173 Mich. 337, 139 N. W. 77, where the facts were similar, and in which the court construed a statute in the exact language of the Missouri statute construed in the McKee Case, and uses this language: "The defendant next claims that the statute of frauds precludes recovery; the representations having been made as to the credit of another, citing Bush v. Sprague, 51 Mich. 41, 16 N. W. 222; Hubbard v. Long, 105 Mich. 442, 63 N. W. 644; Getchell v. Dusenbury, 145 Mich. 197, 108 N. W. 723. All these cases are clearly distinguishable from the case at bar. In Hubbard v. Long, supra, it is said: 'It appears that the arrangement for the purchase was made with the defendant; but the money was paid directly to the bookkeeper of the furniture company, and the defendant never received personally $1 for the purchase price. The fact appears conclusively that the stock which plaintiff received was unissued stock of the company, and which the defendant never possessed.' In Getchell v. Dusenbury, supra, Mr. Justice Grant said: 'The defendant directors were not acting in their own behalf. They were not selling their own stock. They made no profit on the transaction. * * * Defendant Bahlke occupies a different position in the transaction than do the other defendants. He was the only one who was directly to profit by the transaction by receiving a commission. * * * I think

that, under the authorities, the statute does not cover the representations made by Bahlke. See Krause v. Cook, 144 Mich. 365, 108 N. W. 81.' In the instant case defendant not only owned the stock sold, but, as we have seen, by means of the transaction, he secured release of a personal liability upon more than $2,000 of paper. As was said in French v. Fitch, 67 Mich. 492, 494, 35 N. W. 258, 259: 'The statute was never intended to apply to a case like the present. The representations were made as to the value, then and prospective, of the property of the defendant, and which he was selling to the plaintiff. The fact that the representations were applied as well to the company's property as to the defendant's cannot affect the defendant's case.' It is well settled that the statute is limited in its application to cases in which the representation is made for the purpose of obtaining credit for a third person in 20 Cyc. 196, and cases cited in note 83. Here the defendant, by means of his alleged false statements, did not undertake to secure credit for the corporation, but did undertake to sell to plaintiff his own property."

We think the court erred in his conclusion of law to the effect that the facts of this case brought it within the terms of the statute. The evidence conclusively shows that Newman did not buy stock from the company, but that the stock had already been issued, and was owned and held by Lyman.

[2] The third assignment of error assails the eighth finding of fact by the court to the effect that Berner was a bona fide holder of the note, and based the assignment upon a statement that the undisputed evidence showed that Berner bought the notes direct, and had the same transferred to him; that he relied upon the statements made by Lyman, and was therefore chargeable under the law with all representations made by and all of the fraud committed by Lyman in procuring the notes. The evidence is sufficient to show that in the sale of the notes Lyman was acting as the agent of Newman, and the authorities cited by appellant upon the question of burden of proof do not apply to the facts in this case. This is not a contest between the maker of the note and one claiming to be a bona fide holder. It is simply a suit based upon fraud and deceit, and the general rule with reference to the burden of proof in cases of fraud applies.

[3] There are a number of other assignments urged in the brief, which it is not necessary for us to consider. The court found as a fact that prior to the purchase of the stock by Newman he had access to the books of the brokerage company, and frequently examined them, and made inquiry as to the business of the company, and was in a position to know and did know the condition of the affairs of the brokerage company at the time of the purchase of the stock. This finding is not excepted to, and is conclusive, and there is sufficient evidence in the record to

support it. If a party undertakes to discover the truth, then he is bound by everything which a proper investigation would disclose, and the fact that fraudulent representations have been made would not justify him in acting upon them. Garrett v. Burleson, 25 Tex. Supp. 44; Cresap v. Manor, 63 Tex. 485; Hawkins v. Wells, 17 Tex. Civ. App. 360, 43 S. W. 816.

We find no reversible error in the record, and the judgment is affirmed.