────o────

HENRY HESS v. LEMAN L. CULVER.

*Fraudulent representations—In pari delicto—Statute of frauds.*

1. While a man is, for public reasons, held responsible for his conduct, although ignorant of law, there is no conclusive presumption that he actually knows the law. *Black v. Ward,* 27 Mich. 191; *Stanton v. Hart,* Id. 539.

2. Where a man is defrauded, as often happens, by the misrepresentation of some one who assumes knowledge, and where, under the circumstances, he is actually deceived, and not consciously wrong, the fact that the transaction is against public policy in law will not necessarily compel the victim to submit to the fraud of the actual villain.

3. The only rigid rule forbidding relief is where parties are in equal guilt. While the law does not draw fine distinctions in

ascertaining equality of wrong, it recognizes the fact that one party to such an arrangement is not necessarily an equal party in guilt, or consciously guilty at all, and will not deny relief to an injured party against the one who is really the deceiver, and who commits fraud by means of his persuasive or other influence over his victim.

4. How. Stat. § 6188, requiring representations in writing to sustain an action upon favorable assurances concerning the character, conduct, ability, trade, or dealings of another person, was intended to reach cases where the plaintiff has dealt with and given credit to the person favorably mentioned, and done so on the faith of the assurances. Nor can the statute apply to conspiracies or frauds, where the representation is made to enable the party making it to profit by it.

6. In this case, if the testimony is true, defendant, by false and fraudulent pretenses, and without any consideration at all, got from plaintiff notes which he had to pay, and divided the plunder between himself and his confederates. Upon the facts, if believed, the cause of action was complete, and the case should have gone to the jury.

Error to Bay. (Cobb, J.) Argued October 25, 1889. Decided November 8, 1889.

Case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*T. A. E. & J. C. Weadock,* for appellant, contended for the doctrine stated in the opinion.

*Simonson, Gillett & Courtright,* for defendant, contended:

1. The scheme upon its face was a transparent fraud and a gambling contract, and was fully understood by plaintiff. The design to defraud third parties was mutual, and in such cases the Court leaves the parties where it finds them; citing *McNamara v. Gargett,* 68 Mich. 454; *Davis v. Seeley,* 71 Id. 209.

2. The representations, not being in writing, come squarely within How. Stat. § 6188.

3. On a careful reading of the record the Court will find that no representation was made except as to the character, credit, and dealings of the company, thus bringing the case within *Bush v.*

*Sprague*, 51 Mich. 41; *Osburn v. Lovell*, 36 Id. 246; 2 Add. Torts, § 1179.

4. False representations by an agent of an insurance company, concerning its ability and solvency, are within the statute, and must be in writing, even though it is alleged that his object was to secure his own commissions as agent; citing *Wells v. Prince*, 15 Gray, 562; and the motive of defendant is immaterial: citing *Kimball v. Comstock*, 14 Gray, 510; *Mann v. Blanchard*, 2 Allen, 386; Browns, Stat. Frauds, § 184; and no action can be maintained against the treasurer of a corporation for false oral statements as to the credit and ability of the corporation, though made in order to induce the plaintiff to receive a note signed by the defendant as such treasurer; citing *McKinney v. Whiting*, 8 Allen, 207.

CAMPBELL, J.    Plaintiff, who is a farmer near Bay City, was induced by the representations of defendant to give his notes, payable to bearer, for $375 and interest, and deliver them to defendant, who got them discounted by a *bona fide* holder, and plaintiff had to pay them.    This suit was brought to recover against Culver for having obtained the notes by fraud, and without consideration. The only consideration agreed on was the purchase of Bohemian oats at $15 a bushel, and the bond of what purported to be, but was not, a Michigan corporation, agreeing to sell for plaintiff 50 bushels at the same price on a commission of one-third.    No delivery was made to plaintiff of any oats, and the bond was fictitious, if not in law a forgery, there being no such corporation as purported to issue it.

The declaration set forth, and the testimony showed, that plaintiff was led by defendant's persistent arts and misrepresentations concerning the salable prospects of the oats to be grown, and the responsibility and legal character of the mythical corporation, to give his notes, for which he received no consideration whatever.    The court below, however, held that he had no cause of action, and directed a verdict for the defendant.    This could only be upon one of two theories relied on, namely:

*First*, that the transaction was illegal, and the parties *in pari delicto;* and,—

*Second*, that defendant was not liable for false representations not in writing.

So far as the first point is concerned, it seems to be based on a false theory. If plaintiff were seeking to enforce such a bond as was palmed off on him, his ignorance that it was illegal in its purposes would not perhaps absolve him from the consequences of trusting to a void contract. But it has been held by this Court in repeated instances that, while a man is, for public reasons, held responsible for his conduct, although ignorant of law, there is no conclusive presumption that he actually knows the law. *Black v. Ward,* 27 Mich. 191; *Stanton v. Hart,* Id. 539.

Where a man is defrauded, as often happens, by the misrepresentation of some one who assumes knowledge, and where, under the circumstances, he is actually deceived, and not consciously wrong, the fact that the transaction is against public policy in law will not necessarily compel the victim to submit to the fraud of the actual villain. The only rigid rule forbidding relief is where the parties are in equal guilt. While the law does not draw fine distinctions in ascertaining equality of wrong, it recognizes the fact that one party to such an arrangement is not necessarily an equal party in guilt, or consciously guilty at all, and will not deny relief to an injured party against the one who is really the deceiver, and who commits fraud by means of his persuasive or other influence over his victim. Even actual knowledge of legal rights and liabilities is not always conclusive against relief. *Wartemberg v. Spiegel,* 31 Mich. 400; *Barnes v. Brown,* 32 Id. 146. Our statutes make this clear distinction in regard to gaming contracts. The winner cannot enforce his winnings against the loser, but

the loser may recover back money actually paid. How. Stat. § 2023. Where this may be done in case of open gambling, where the loser knew all about it, the law is not so squeamish as to refuse redress to a loser who was defrauded into paying money without understanding fully that the dealing was improper. One of the elements in this fraud was that defendant accomplished it by representing that the alleged company was a corporation authorized to do the acts referred to by the laws of this State, and therefore having full legal sanction and recognition in its doings, so that plaintiff had no reason to suppose the dealings would be subject to any lawful objection.

The other point suggested has no support in the statute. The legal provision concerning the necessity of representations in writing to sustain an action upon favorable assurances concerning the character, conduct, ability, trade, or dealings of another person, was intended to reach cases where the plaintiff has dealt with and given credit to the person favorably mentioned, and done so on the faith of the assurances. That statute cannot apply to conspiracies or frauds, where the representation is made to enable the party making it to profit by it. Moreover, in the present case, the false showing was not concerning the responsibility of an existing person whose personality was known, but concerning an alleged corporation that was no corporation, and whose pretense of legal existence was itself a fraud. *Bush v. Sprague*, 51 Mich. 41 (16 N. W. Rep. 222), is in point on more than one question in this case.

Here, if the testimony is true, defendant, by false and fraudulent pretenses, and without any consideration at all, got from plaintiff notes which he had to pay, and divided the plunder between himself and his confederates.

Upon the facts, if believed, the cause of action was complete. The case should have gone to the jury.

The judgment must be reversed, with costs, and a new trial granted.

CHAMPLIN, MORSE, and LONG, JJ., concurred. SHERWOOD, C. J., did not sit.