LEWIS PEARL v. CHARLES WALTER ET AL.

*Fraud—Bohemian oat note—Action by defrauded party.*

1. This case is ruled by *Hess v. Culver*, 77 Mich. 598.
2. It must not be considered that the remarks of this Court in *Davis v. Seeley*, 71 Mich. 213, in which the Bohemian oat note scheme is declared to be a "transparent fraud," were intended to cut off *all* men from relief as against the chief swindlers in those transactions. The law takes note of the ignorant, the credulous, and the unwary, and will make their ignorance and want of cunning their innocence, and protect them.

Error to Clinton. (Moore, J., presiding.) Argued April 16, 1890. Decided April 25, 1890.

Case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*J. O. Selden,* for appellant.

*Spaulding & Walbridge* and *Will H. Brunson,* for defendants.

MORSE, J. This case, as presented by the plaintiff's declaration, is so nearly like that of *Hess v. Culver,* 77 Mich. 598, as to be governed by it.

The suit was commenced by summons in the circuit court for Clinton county. No service was obtained upon defendant Wright, and he did not appear. The other defendants appeared by separate attorneys. Declaration was filed May 12, 1888, to which defendant Walter demurred on the 17th of the same month. September 1, 1888, defendant Bailey filed his plea of the general issue. November 26, 1888, the circuit judge, Hon. V. H. Smith, overruled the demurrer of Walter, and February 16, 1889, he pleaded the general issue. October 14, 1889, the case came on to be tried before Hon. J. B. Moore, presiding judge, and a jury was impaneled and sworn. Upon the offer of testimony by the plaintiff to support his declaration, the defendant Bailey objected for the reason that such declaration did not set forth any cause of action, and was insufficient in law. The judge, after hearing arguments, decided the objection to be well taken, and directed a judgment for the defendants.

The only material difference between the present case and that of *Hess v. Culver, supra,* is that the plaintiff received the oats, which were of some value, but this cannot alter or diminish the fraud, except as regards the damages. It is claimed, also, that plaintiff knew the

scheme was a fraud when he went into it, and therefore should not be permitted to recover on grounds of public policy; that this knowledge sufficiently appears from the declaration, but, independent of that, it ought to be presumed that he knew that the oats could not be sold for $15 per bushel, except by perpetrating a fraud upon a third party.

It has been said by this Court in two cases that this Bohemian oat scheme carried upon its face the evidence of its fraud. *McNamara v. Gargett*, 68 Mich. 454; *Davis v. Seeley*, 71 Id. 209. But we have also recognized the fact that, transparent as it seems to us, it has yet been accepted by thousands in this State, many of whom did not understand its true character, and had no suspicion of wrong, and that it is—

"So cunningly devised that, in the hands of a sharp, shrewd, designing man, hundreds of the unwary have been defrauded." *McNamara v. Gargett*, 68 Mich. 459, 460.

And we also said in *Hess v. Culver*, 77 Mich. 598:

"Where a man is defrauded, as often happens, by the misrepresentation of some one who assumes knowledge, and where, under the circumstances, he is actually deceived, and not consciously wrong, the fact that the transaction is against public policy in law will not necessarily compel the victim to submit to the fraud of the actual villain."

The declaration shows that when the defendant Bailey first approached plaintiff upon the subject of buying these oats plaintiff told him that he was afraid of the scheme, and he thought there was something wrong about it. This is all there is in the declaration to show that plaintiff supposed he was to become a party to any fraud. The declaration charges a conspiracy to defraud him on the part of the defendants, and sets out the details of such conspiracy, and the acts and declarations of the conspirators in the accomplishment of their object, and we

think a case is made against all of them. Bailey went to see plaintiff first. When the plaintiff doubted the rightfulness of the transaction, as above quoted, Bailey named a reputable attorney at Ovid, with whom he said he had consulted, and had been advised by him—

"That said Bohemian Oat Company's mode of doing business was legitimate, and that the dealing in said oats, as was being done in many places, was legal and all right."

He also stated that the defendants Walter and Wright were selling Bohemian oats for him. Afterwards Bailey sent Walter and Wright to plaintiff, and their representations induced him to buy the oats. Among other things, they represented that they were the agents of the " Bohemian Oat & Cereal Company of Ypsilanti;" that it was a legal and responsible corporation, incorporated under the laws of this State. They showed him a paper, purporting to be a certificate of the Secretary of State that the company was duly incorporated. They also presented him "a nicely printed paper, with a broad golden seal upon it, which they asserted and declared to be a bond" of said company, and said that if he would buy 30 bushels of said Bailey's Bohemian oats at $15 per bushel, and give Bailey his negotiable note for $250 at 14 months, with interest at 7 per cent., and a note for $200 to said Walter at 13 months, they would fill out the blanks in said bond and deliver the same to plaintiff. If the bond was not fulfilled, all the plaintiff would have to do would be to go to the State Treasurer at Lansing, with whom the company had deposited $100,000, and there he would receive the full amount of his damages. Relying upon these statements, which were false, the plaintiff bought 30 bushels of said oats, and gave his promissory notes as above, and he avers that he would not have bought said oats, or given his said notes, had he not believed said

statements to be true, and had not the said bond been delivered to him.

The bond reads as follows:

"No. 432.                         Capital stock,_ _ _ _ _ _ _ _ _ _ $100,000.

"F. A. BOND.

HOME OFFICE, ⎰
*Ypsilanti, Michigan.* ⎱

"The Bohemian Oat & Cereal Company, incorporated under the Laws of the State of Michigan, December 21, 1884.

"Know all men by these presents that the Bohemian Oat & Cereal Company do hereby agree to sell 60 bushels of Bohemian oats for Mr. Lewis Pearl at $15 per bushel, in cash or by note, for which said Pearl is to pay 33⅓ per cent. commission for selling; said commission to be paid in notes for which said grain is sold; said grain to be sold on or before September 23, 1887; the price on this grain being a fictitious value for speculative purposes.

"In testimony whereof the said Bohemian Oat & Cereal Company has caused this bond to be signed and sealed by the superintendent of said company this 23d day of October, 1886.

"This company will not be held responsible for any outside contracts made by agents other than those expressed on the face of this bond. This bond is void without the company's seal and signature of superintendent.

"J. W. ORCUT, Superintendent."

It will be noticed that the selling of the oats to be raised by plaintiff was to be done by the company, and nowhere is it stipulated or agreed that plaintiff should in any way aid in such selling except to furnish the oats. We do not think plaintiff's part in the transaction shows upon its face any knowledge that a fraud was necessarily to be perpetrated upon any one else, or any intent upon his part to participate in any fraud upon third persons. It must be remembered that many people do not have the intelligence to discern a fraud as easily as those whose business it is to discover and punish frauds. The court may at a glance detect the swindle in a transaction which, plausibly disguised, may deceive many good and honest men, and the moral perception of one man may

not be so quick and clear as that of another, and yet, both may equally be honest in the sight of the law, and entitled to its protection. It must not, therefore, be considered that the remarks of this Court in *Davis v. Seeley,* 71 Mich. 213, in which this scheme upon its face is declared to be a "transparent fraud," were intended to cut off all men from relief as against the chief swindlers in these Bohemian oat transactions. The law takes note of the ignorant, the credulous, and the unwary, and will make their ignorance and want of cunning their innocence, and protect them. To do otherwise would put a premium upon villainy, if such villainy but reach its end by an appeal to the hope of gain, which animates us all, so plausibly and cunningly worded as to make the worse appear the better to one not skilled in the ways of the world.

In this case the plaintiff was a farmer, whose fear that the scheme was wrong was easily dispelled by what was said to be the counsel of a good lawyer, by the pretended certificate of the Secretary of State that the company was incorporated, and that what was to him an immense sum of money was deposited with the State Treasurer at Lansing, sufficient to pay all damages occasioned by the nonfulfillment of the obligations of the bond. It cannot be said as a necessary legal deduction that he knew that his part in the transaction would in the end swindle or defraud some one; nor in fact did it. It turns out that he alone in this transaction was defrauded. It may well be conceived that the plaintiff, under the representations made and the documents shown to him, did not stop to reason out the consequences beyond himself, and to consider that some time in the future, if his bond was fulfilled, somebody else must suffer loss to make his gain. What we may now see in the light of many cases like the one before us, or what a lawyer or other skilled busi-

ness or professional man might have seen in such a scheme upon its presentation, cannot be held up as a guide and standard for all of our people. We must, in order to do justice, remember that this kind of swindling is practiced almost universally upon those whose means of knowledge and whose experience in the frauds and deceits of the world are limited within narrower bounds than ours; and we are not authorized to take it for granted, as argued by counsel, that every honest man would at once discover the fraud in this Bohemian oat scheme.

It is argued very strenuously by the counsel for the defendant Bailey that the declaration does not show that he made any representations upon which the plaintiff relied; that such representations were made entirely by Walter and Wright. But as Bailey was selling his own oats, and delivered them to plaintiff, and first called upon plaintiff to sell them, and there stated that Walter and Wright were selling oats for him, and afterwards sent them to plaintiff, we are satisfied that he was the main man in the concern, and responsible for all that was done or said by any of the defendants.

The judgment must be reversed, and a new trial granted, with costs of this Court to plaintiff.

The other Justices concurred.