GETCHELL *v.* DUSENBURY.

145   197
d158   134

1. FRAUD—DECEIT—MISREPRESENTATIONS—MATTERS OF OPINION.
   Representations made to induce the purchase of stock in a corporation which are mere matters of opinion are not actionable though false.

2. SAME—CONSPIRACY—CORPORATIONS—INCREASE OF STOCK—SALE BY DIRECTORS.
   Where the stockholders and directors of a corporation vote to increase its capital stock in good faith, it becomes their duty to promote the sale of such stock by all legitimate means, and that they act in concert in the matter of promoting the sale is no evidence of a conspiracy.

3. STATUTE OF FRAUDS—REPRESENTATIONS—CREDIT OF CORPORATION—LIABILITY OF OFFICERS.
   Representations as to the credit and ability of a bona fide corporation, made by its officers in a good faith attempt to sell its stock, out of which sales they make no personal profit, are representations concerning the credit of another, and are not actionable unless in writing (§ 9518, 3 Comp. Laws).

4. FRAUD—REPRESENTATIONS—CORPORATIONS—PURCHASE OF STOCK—EVIDENCE.
   A purchaser of stock in a corporation cannot recover against the directors for fraud in inducing the purchase, where he became a director soon after purchasing his stock and participated as such in the transactions of the corporation, and there is no evidence that such transactions were not the cause of the failure of the corporation.

5. STATUTE OF FRAUDS—REPRESENTATIONS—CREDIT OF CORPORATION—LIABILITY OF AGENT SELLING STOCK.
   An agent selling the stock of a corporation on commission and making false representations in regard to its credit and ability is not protected by the statute (§ 9518, 3 Comp. Laws) providing that representations concerning the credit of another shall not be actionable unless in writing.

Error to Isabella; Chittenden, J., presiding. Submitted January 31, 1906. (Docket No. 114.) Decided July 23, 1906.

Case by Albert T. Getchell against George A. Dusenbury, Albert W. Bahlke, and others, for fraud. There was judgment for defendants on a verdict directed by the court, and plaintiff brings error. Reversed as to defendant Bahlke, and affirmed as to the other defendants.

The declaration in this case alleges that the defendants were officers, directors, stockholders, agents, and employés of the Mt. Pleasant Body Works, a corporation situated at Mt. Pleasant, and engaged in the manufacture of a "plugless buggy" box; that by virtue of their relations to the corporation they were acquainted with its financial condition and had the necessary knowledge and information to enable them to make a full, true, and correct statement of its affairs and conditions; that defendants Dusenbury, Dains, Lewis, and Taylor were personally responsible for some of the debts of the corporation, and interested in securing money to pay its debts; that its capital stock was $12,000, fully paid in; that it was in debt on Februray 17, 1903, the date alleged in the declaration on which defendant paid a subscription of $1,250 to the increased capital stock of the company; that defendant Bahlke, as the agent of the defendants, falsely and fraudulently represented to the public in general and to the plaintiff in particular that the business of the corporation was flourishing and prosperous and past its experimental stage, was upon a paying basis and paying good dividends, was out of debt, and had a large number of orders on hand; that all the company lacked was an increase in its capital stock furnishing more money to enable it to earn large dividends; that these false and fraudulent representations were made in pursuance of a fraudulent conspiracy entered into by the defendants to defraud the public generally and the plaintiff in particular. The declaration also alleges that "the defendants Dusenbury, Dains, Lewis, and Taylor were personally liable and responsible for the debts of said corporation, and interested personally in securing the money to be obtained by the fraudulent con-

spiracy." The declaration is based upon conspiracy. After stating the above facts and some others, the declaration proceeds:

" "And while the said corporation and its affairs was in the condition aforesaid, and on, to wit, the date aforesaid, at the city of Mt. Pleasant, in the county of Isabella, and State of Michigan, the said defendants Dusenbury, Taylor, Dains, and Lewis, being four of the directors of said corporation, and the said defendant Lathrop being one of the stockholders thereof, and all of the said defendants having full knowledge of the condition of said corporation and its affairs as aforesaid,  *  *  *  did fraudulently, secretly, and deceitfully conspire together, among themselves and with the other defendant Albert W. Bahlke, who was then and there possessed of full knowledge of the said affairs also, and the said Albert W. Bahlke did then and there fraudulently, secretly, and deceitfully conspire with the other defendants named, all to form and make among and between themselves an unlawful confederacy and conspiracy to defraud the plaintiff herein, in manner and form as follows."

Then follows a description of the means resorted to and the effect thereof. At the conclusion of the plaintiff's case the court directed a verdict for the defendants upon the ground that the evidence failed to establish a conspiracy or fraud on the part of any of the defendants except Mr. Bahlke.

Plaintiff testified that Bahlke came to him with a proposition to buy some stock; that Bahlke said to him:

" 'If you understood this thing you would take stock, because it is one of the finest bodies made, and this body is bound to be a money-maker. There is no question about it. We are making money now. We have got beyond the experimental stage and we are making money. We know just exactly what we are making on a body.' And he took out his paper and had his figures to show up just what was the cost for each part of the body, and he says, 'We get so much.' I don't remember just the figures now, but it made a good fair profit on a body, I think. 'Well,' I says, 'can you sell them for that?' He says: 'Yes, there's no question about it. We have got orders ahead to run us a year, and we will have no trouble in

selling them,' I says: 'What is there about this body that makes it so much better than others?' He went on to show me the best he could about the patent, and told me about it, and said he wanted me to go down to the factory and see the body. 'Well,' I says, 'do you own the patent?' He says, 'Yes, we own the patent, and we own the factory.'"

He further testified that Bahlke told him who the directors and some of the stockholders were, and said: "You know them all. You are acquainted with all these men. They are representative business men here. They would not be in it if there was no money in it"—and told him to see them. Plaintiff went to the factory, examined it, and thought it the best buggy box he ever saw. Among the names of the officers and stockholders so stated to him by Bahlke were the defendants. Plaintiff further testified that he talked with each one of them separately, and told them what Bahlke had said; that each stated that what Bahlke said was true. After considering the matter plaintiff signed a subscription blank on January 15, 1903, and subsequently, on February 17th, gave his check for the amount. The evidence discloses that defedants Dains, Lewis, Taylor, and another director, Johnson, were indorsers on the paper of the company to the amount of $1,000 at the time it was voted to increase the capital stock. The paper had not been paid when this suit was commenced. On April 14, 1903, defendants Dains, Lewis, Taylor, and Lathrop indorsed the company's paper for $2,000, and on March 10, 1903, they indorsed another note for $294.84. These notes were unpaid when suit was commenced. Defendant Lewis subscribed and paid for new stock to the amount of $350, defendant Dusenbury to the amount of $200, defendant Dains to the amount of $150, defendant Lathrop to the amount of $500, and Bahlke $100. The relatives and business associates of some of the defendants subscribed and paid for new stock to the amount of $1,000. After the new stock was voted and sold, $700 was paid upon notes upon which

some of the defendants were indorsers. These notes were not in existence at the time it was voted to increase the capital stock. One was a note for $200, dated November 29, 1902, due in 60 days; one for $200, dated December 8, 1902, due in 90 days; and a third for $200, dated December 8, 1903, due in 90 days. These were subsequently paid, and another $100 indorsed upon a note for $900, due in 90 days, and dated December 13, 1902. All the money subscribed was legitimately used in paying the debts of the company.

*John T. Mathews*, for appellant.

*Charles T. Russell, F. McNamara*, and *I. A. Fancher*, for appellees.

GRANT, J. (*after stating the facts*). Those representations which were made by Bahlke or by any other of the defendants, which were mere matters of opinion, are immaterial. Plaintiff testified to the statement of the defendants as above set forth, and gave some evidence tending to show that they were not true, and might have been known by defendants to be untrue, and that he relied upon them in making his subscription.

There is no evidence that the directors and stockholders of the defendant did not act in entire good faith in deciding to increase the capital stock of the company and in employing Mr. Bahlke to sell it. His commission was reasonable. After the stockholders had voted the increase, it was the duty of the defendant directors to act together and to promote the sale of the stock in all legitimate ways. That they did act together for that purpose is no evidence of a conspiracy. The record is not very satisfactory as to what occurred on October 10th at the meeting of the stockholders to determine whether there should be an increase of the capital stock. One Johnson, then a director, a witness for plaintiff, who voted for the increase, testified:

"It is a fact that the directors laid the whole condition of the company before the stockholders on the 10th of October."

He also testified:

"I don't remember of any statement of the condition of the company being read at the meeting of the stockholders."

Even if the declaration were sufficiently broad to include the charge of fraud aside from conspiracy, the case as to the directors would clearly come within the statute of frauds (3 Comp. Laws, § 9518), providing that:

"No action shall be brought to charge any person, upon or by reason of any favorable representation or assurance, made concerning the character, conduct, credit, ability, trade or dealings of any other person, unless such representation or assurance be made in writing, and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorized."

The defendant directors were not acting in their own behalf. They were not selling their own stock. They made no profit by the transaction. They were not floating a spurious corporation. They were in good faith carrying out the direction of the stockholders of a bona fide corporation. They could not be held guilty of fraud upon the charge that they profited by the transaction, because they did not. The defendants were representing the good faith and credit of another and not themselves, and therefore are within the statute. *Bush* v. *Sprague*, 51 Mich. 41; *Hubbard* v. *Long*, 105 Mich. 442, 449; *Hess* v. *Culver*, 77 Mich. 602 (6 L. R. A. 498).

It is unnecessary to enter into the history of this corporation subsequent to the increase of its capital stock, and the cause of its final failure. Plaintiff was made a director soon after he subscribed, and participated in all the subsequent transactions. As the circuit judge said, there was no evidence to show that the transactions, subsequent to the time of plaintiff's subscription, in which he participated, were not the cause of the failure of the corporation.

Defendant Bahlke occupies a different position in the transaction than do the other defendants. He was the only one who was directly to profit by the transaction by receiving a commission. It is said in *Hess* v. *Culver*, supra:

"That statute cannot apply to conspiracies or frauds where the representation is made to enable the party making it to profit by it."

I think that under the authorities the statute does not cover the representation made by Bahlke. See *Krause* v. *Cook*, 144 Mich. 365.

It follows that the judgment must be reversed as to defendant Bahlke, and a new trial ordered, and affirmed as to the other defendants.

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.