MASSEY *v.* LUCE.[1]

1. FRAUD—STATUTE OF FRAUDS—REPRESENTATIONS AS TO CREDIT
   OR STANDING.
   The requirement of 3 Comp. Laws, § 9518, that representations
   as to a party's credit or standing must be in writing or no
   action may be brought on them, does not apply to conspira-
   cies or frauds, where representations are made for the profit
   of the maker.

2. SAME—CORPORATIONS—LIABILITY OF OFFICERS AND AGENTS.
   Money invested in a corporate business, upon the false represen-
   tations of officers of the company that the business was good
   and free from debts, may be recovered, in an action on the
   case for the fraud, from the officers making the false repre-
   sentations, if they were found to be made for the purpose of
   defrauding the plaintiff.

3. SAME.
   It is not necessary that the false representations should have
   been the sole or principal inducement to enter into the con-
   tract, if they exerted a material influence upon the mind of
   the person injured.

4. SAME—WAIVER—COMPROMISE—PART PAYMENT.
   The receipt of a check for part of the money invested only
   affects the measure of the damages.

5. SAME—CORPORATIONS.
   The fact that the representations were made concerning a
   corporation does not preclude a recovery, notwithstanding
   plaintiff did not know of the existence of a corporation, but
   understood that they applied to the business involved in and
   conducted under the corporate name.

Error to Kent; Sessions, J., presiding. Submitted
April 12, 1909. (Docket No. 31.) Decided September
21, 1909. Rehearing denied November 5, 1909.

Case by Wynter C. Massey against Morton H. Luce
and William B. Banks for fraud. A judgment for de-

---

[1] Rehearing denied November 5, 1909.

fendants is reviewed by plaintiff on writ of error.   Reversed.

*Smedley & Corwin (C. J. Hall,* of counsel), for appellant.

*Kleinhans & Knappen,* for appellees.

McALVAY, J.   Plaintiff brought an action on the case against defendants to recover from them the sum of $5,000 which they had procured from him by certain claimed false and fraudulent representations made to him for the purpose of cheating and defrauding him.   Defendants in 1906 were jointly engaged at Grand Rapids in handling and selling automobiles.   Each invested equally from October 9, 1906, to December 10, 1906, $1,550, and entered into contracts with automobile manufacturers October 9 and November 13, 1906.   On December 10th defendant Banks paid in $650, defendant Luce $850, and Mrs. Luce $100.   This business was transacted under the name of the Luce & Banks Company.   In this business they needed money and obtained a line of credit with the Grand Rapids Savings Bank of $5,000.   The arrangement was made between Luce & Banks and the bank in November, 1906.   They were to give their personal indorsement on their paper or bonds, and a bond was given signed by them individually.   The first entry in the bank pass book was November 7, 1906. Afterwards a corporation, called the Luce & Banks Company, was organized and held its first meeting December 20, 1906, with a capital stock of $5,000, all of which was owned by defendants except one share, which was owned by the wife of defendant Luce.   It is inferred that no change was made in the books when the corporation was organized and the payments theretofore made as above stated considered as payments of stock subscriptions. There is no evidence of any other payments.

Plaintiff, a young man 28 years old, became acquainted with the defendants in February or March, 1907.   He was

approached by defendant Luce, and asked how he would like to go into the automobile business. He replied that he would like it because he was mechanically inclined. Later, after this business had been removed to new quarters, defendant Luce had another talk with him, in which plaintiff claims that he was told that the defendants each had put $5,000 in the business; that they were doing a good business; that the outlook was good for business, and that they did not owe any money; that they needed some money; and that, if he put in $5,000, they would give him a one-third interest in the business and a permanent salary of $20 per week. Plaintiff said he was satisfied; that he did not have the cash, but could get notes of W. Millard Palmer, with whose company he had money invested. He got two notes of Mr. Palmer of $2,500 each, and, in company with defendant Luce, on April 5, 1907, went to the Grand Rapids Savings Bank, and procured from the cashier $5,000 by giving his individual note for that amount, secured by the two Palmer notes. That this $5,000 was paid at this time and in this manner is not disputed. For this money plaintiff received no receipt and no certificates of stock were ever issued to him.

The Luce & Banks Company, of which plaintiff claims he had no knowledge until October, 1907, was in fact on this date indebted to this bank exceeding the line of credit extended on certain notes, none of which were then due, and for the payment of which defendants were individually liable in the sum of $5,400, upon which $4,000 of the money paid by plaintiff was, as he claims, without his knowledge, at once applied, and to that amount were paid and satisfied. Of these notes $3,850 were either the originals or renewals of notes given by defendants while doing business together before the organization of the corporation.

On April 10, 1907, five days after plaintiff had paid in his $5,000, there was held at its office at 7:30 p. m. a special meeting of the stockholders of Luce & Banks

Company, without notice to plaintiff, for the purpose of increasing the capital stock and amending the articles of association. The defendants and Mrs. Luce were present. On motion of Banks, a resolution was unanimously adopted increasing the capital stock from $5,000 to $7,500, to be divided into 75 shares of $100 each. Banks also offered the following resolution, which was unanimously adopted:

"Resolved, that the increased capital stock of said company, namely, of the face value of $2,500, be sold to Wynter C. Massey for the sum of $5,000."

Luce offered a resolution amending the articles of association to conform with the increased capital stock. No other business was transacted. The minutes are certified by Luce as president and Banks as secretary. After paying his money, plaintiff went to work in the business, selling automobiles, etc., at a salary of $20 per week, and continued until the latter part of the following October, when defendant Luce told him that he and Banks had put in but $2,500 each. Luce told him that there was a loss, and he, plaintiff, must stand his share. Plaintiff said he was willing to do so. He testifies that the amount of the loss was not mentioned; that afterwards Luce told him he must stand two-thirds of the loss. Plaintiff refused, and sent for his father, who came from Cadillac in his interest. He left at once, and had nothing further to do with the business. While he was there he knew of no stockholders' meetings. It appeared from the books that defendants had, in fact, charged him two for one on stock claimed to have been sold to plaintiff, crediting profit and loss with $2,500. He began this suit directly after discovering the fact that he had been defrauded.

On November 1, 1907, a stockholders' meeting was held. Plaintiff received notice, but, having left, he paid no attention to it. At this meeting the minutes show that the object was to authorize the directors to sell all the property owned by Luce & Banks Company except book

accounts, and to transfer the lease to W. S. Farrant. This meeting voted the authority asked, and immediately following adjournment the directors met and made the sale, but the record of the meeting does not show the consideration paid. On January 17, 1908, a special stockholders' meeting was held according to claimed notice given to all stockholders. Whether the object of the meeting was stated in the notice does not appear. Plaintiff was not present. They proceeded to dissolve the corporation, and so voted. It was stated that $2,550 had been realized from the sale of property and collections on accounts, and a dissolution dividend on the capital stock of 34 per cent. was declared. The directors were authorized to convert all further assets into cash, and divide the same *pro rata* among the stockholders.

Two months after issue joined in this case, and after the dissolution dividend above described was declared, the amount of such dividend on 25 shares of stock, being what defendants claim was his interest, was sent by mail to the plaintiff in the form of a check, with a letter informing him of the above facts. He received the check and sent it to his attorneys, who had it certified and held it until the time of the trial. Further reference to this check will be made later in this opinion.

Defendants denied that any representations as claimed had been made, and testified that plaintiff was informed that the amount each had invested was $2,500, and explained the proposed increase of the capital stock, and that, when they discussed going out of business in October, they offered to sell out to him for what they had put in, and told him this was $2,500 apiece. The annual report of the Luce & Banks Company, filed March 20th with the secretary of State, shows assets $6,343.03, and liabilities $5,350. The case was submitted upon the charge of the court to the jury, which returned a verdict in favor of defendants of not guilty, upon which a judgment was duly entered. Plaintiff asks a reversal of this judgment on account of claimed errors which are assigned to the

charge of the court as given to the jury, and to refusals to charge as requested.

Error is assigned upon that part of the charge of the court given relative to the application of the statute of frauds to the case at bar. The charge of the court on this point was:

" For another reason: These statements alleged to have been made by the defendant Luce concerning the prosperity of the business, as to the company being prosperous and doing a good business and doing well, and also the statement that the company was out of debt, if it were made by the defendant Luce, and if in fact were untrue, or if both of these statements to plaintiff were untrue, they do not form or constitute any basis of recovery in this case. And even though you should find that these statements were made by the defendant Luce, and that they were untrue, and even though you should find they were made for the purpose of deceiving the plaintiff, and that he was actually injured thereby, the plaintiff cannot recover any damages that he claims to have sustained because of such representations or statements. The reason for that is this: That we have a statute in this State which precludes the recovery for any such misrepresentations or statements, and that statute is as follows:

" 'No action shall be brought to charge any person, upon or by reason of any favorable representation or assurance, made concerning the character, conduct, credit, ability, trade or dealings of any other person, unless such representation or assurance be made in writing, and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorized.' [3 Comp. Laws, § 9518.]

" So that I say, as to the representations claimed to have been made by the defendant Luce to the plaintiff, that the profits of the business would be larger, and as to the representations claimed to have been made by the defendant Luce to the plaintiff that the business of the Luce & Banks Company was prosperous, and doing well, and as to the representation that the Luce & Banks Company was out of debt, there can be no recovery in this case. The defendants are not liable because of any such statement or representations, even if it were made and if it were false, and if it deceived the plaintiff."

It is contended that in this portion of the charge the court included all kinds of representations, even though made fraudulently and to enable the party making them to profit thereby. In this case plaintiff claimed that these representations were false and untrue, and so known to defendants; that they conspired together to defraud and deceive him, and succeeded in getting $5,000 by means of such fraud and deceit; and that they profited by the result of their fraudulent conduct. We think that there was sufficient evidence in the case upon that claim to go to the jury under proper instructions, and that this part of the charge does not conform with the construction which this court has given to the statute upon which the court relied.

In construing and applying this statute the court has said:

"The other point suggested has no support in the statute. The legal provision concerning the necessity of representations in writing to sustain an action upon favorable assurances concerning the character, conduct, ability, trade, or dealings of another person, was intended to reach cases where the plaintiff has dealt with and given credit to the person favorably mentioned, and done so on the faith of the assurances. The statute cannot apply to conspiracies or frauds, where the representation is made to enable the party making it to profit by it." *Hess* v. *Culver*, 77 Mich. 602 (43 N. W. 994, 6 L. R. A. 498, 18 Am. St. Rep. 421), affirmed and cited in *Clark* v. *Hurd* 79 Mich. 130 (44 N. W. 343).

As to whether in the case at bar defendants received a benefit or profit from the money plaintiff claims was gotten from him by fraud and deceit there can be little doubt. The money to the extent of $4,000 was at once applied to the payment of indebtedness, a part of which would appear to have been primarily their joint and individual obligations, and upon all of which they were liable as indorsers, and also upon their bond. The case in this respect is distinguishable from the case of *Getchell* v. *Dusenbury*, 145 Mich. 197 (108 N. W. 723), where, at

the time suit was begun, the notes indorsed were not paid, and the plaintiff's money had not been used to take up the notes. The court was in error in charging the jury as above quoted. If these representations were false and fraudulent, and made for the purpose of defrauding plaintiff, and he was injured and defrauded thereby, he is entitled to recover his damages.

The court, considering the law which governed the case as given in the foregoing quotation, submitted to the jury but one of the fraudulent representations charged, namely, that defendant Luce represented that each of the defendants had invested $5,000 in that business. It is apparent, from what has already been said, that the jury should have been allowed to consider all of the claimed fraudulent statements upon which plaintiff relied, except as to the expectation of increased business and profits. The view of the court was that one only of the false representations claimed must have induced plaintiff to part with his money.

"It is not necessary that the false representations should have been the sole cause or even the principal inducement for the plaintiff to enter into the contract. If it exerted a material influence upon his mind, although it is only one of the several motives acting together which produced the result, the defendant would be liable." Smith on Fraud, p. 83.

See, also, *McDonald* v. *Smith*, 139 Mich. 218 (102 N. W. 668).

The evidence of plaintiff is not inconsistent with the theory that the representations were made of and concerning the corporation, even though the plaintiff did not know it was a corporation until October, 1907, and did not know of the increase of capital or that they charged one-half of the money they took from him to profit and loss. They were talking of the business, and this was the only business. It was known to all as Luce & Banks Company, and defendants insist they were selling him an interest in the corporation, and insist that all the representations and statements they made were with relation

to the corporation. They cannot complain if their testimony in that regard is accepted. Such evidence of plaintiff was admissible under the first count of his declaration. The second count was withdrawn at the trial.

It is contended that the court should have instructed for defendant, and that plaintiff cannot complain, because the result could not have been different. As we understand the case, this contention cannot be accepted for several reasons, which are obvious, the principal one of which is that there was abundant evidence on the part of the plaintiff to require its submission to the jury upon the disputed questions of fact.

The receipt and retention by the plaintiff of the check which defendants caused to be sent cannot operate to defeat his right of action, and we think that the amount bears simply on the measure of damages in case of recovery by plaintiff.

No further discussion is required. The judgment of the circuit court is reversed, and a new trial ordered.

BLAIR, C. J., and GRANT, MONTGOMERY, and BROOKE, JJ., concurred.