IN RE CHARLES W. WILLARD.

CHARLES W. WILLARD, APPELLANT, v. CHARLES E. HENIG ET AL., APPELLEES.

FILED MARCH 6, 1913.    No. 17,933.

1. **Habeas Corpus:** IRREGULARITIES. When the requisition papers for the extradition of a person charged with crime in another state clearly show the county in which it is alleged that the crime was committed and where the proceedings were begun, and the governor of this state has ordered the return of the defendant, the fact that the request for extradition by the governor of the requesting state names a different county as the one where the proceedings were begun will not be regarded so material as to require the court upon habeas corpus to discharge the prisoner.

2. ——: RETURN. Upon proceedings in habeas corpus to obtain the discharge of one who is held under the governor's warrant in extradition, if the return sets forth the governor's warrant under which the accused is held, and the recitals of the warrant, together with the allegations of the application for habeas corpus, show facts sufficient to justify the detention of the accused, the return is sufficient.

3. **Extradition: Showing: Habeas Corpus: Questions of Law.** When such requisition is made on the governor of this state, he must determine, first, whether the person demanded is substantially charged with a crime against the laws of the state from whose justice it is alleged he has fled by an indictment or affidavit properly certified; and, second, is he a fugitive from justice from the state demanding him? When it is made substantially to appear to the court in habeas corpus proceedings upon what showing the governor acted, it becomes a question of law for the court to determine whether or not the accused has been substantially charged with a crime against the demanding state. *Dennison v. Christian*, 72 Neb. 703.

4. **Courts: Extradition: Review.** The courts are bound by the construction of the extradition laws adopted by the supreme court of the United States, and the courts of this state will not review the decision of the governor in extradition proceedings upon a question of fact made before him which the law makes it his duty to decide, and upon which there was evidence pro and con before the governor.

5. **Appeal: Sufficiency of Evidence.** In determining whether the evidence before the court below was sufficient to support the judgment, this court will not regard errors of the trial court in admitting incompetent evidence, if it appear from the whole record that upon the evidence conceded to be competent no other conclusion could be reached than the one reached by the trial court.

6. **Evidence examined, and found sufficient to sustain the judgment of the district court.**

Appeal from the district court for Lancaster county: Albert J. Cornish, Judge. *Affirmed.*

*B. F. Good, E. G. Maggi, A. M. Bunting* and *T. J. Doyle,* for appellant.

*J. B. Strode* and *G. E. Hager, contra.*

Barnes, J.

Appeal from a judgment of the district court for Lancaster county denying the relator a writ of habeas corpus.

It appears that on or about the 12th day of June, 1912, one J. P. Bland filed a complaint in due form before Charles Humphrey, a justice of the peace in and for

Lenawee county, in the state of Michigan, charging the relator with the crime of embezzlement, which was alleged to have been committed in that county and state on or about the 22d day of May, 1912. Thereupon, the justice of the peace issued his warrant, in due form, for the arrest of the relator, who was charged with the commission of the crime, under the name of William A. Maynard, and who, it is admitted, is the relator. Thereafter, and on the 17th day of October, 1912, the governor of the state of Michigan, upon an exhibition of the said complaint and warrant, and upon the affidavits and certificates thereto attached, made his request upon the governor of the state of Nebraska for a warrant of rendition for the delivery of the relator to one Charles E. Henig, who was designated by the governor of the state of Michigan as his agent to receive and take relator into custody and return him to that state to be dealt with according to law. It further appears that on the 9th day of November, 1912, the governor of this state duly honored the above request, and issued his warrant of rendition to the respondent, who thereupon took the relator, who was found in the city of Lincoln, and who had assumed the name of Charles W. Willard, into custody. To obtain his release, relator brought this proceeding. On the trial in the district court the writ of habeas corpus was denied, and the relator was remanded to the custody of the respondent, and from that judgment the relator has appealed.

It is conceded that but two questions are presented by the record for our determination: First, is the relator substantially charged with an offense against the laws of the state of Michigan? Second, is he a fugitive from the justice of that state?

Concerning the first of these questions, it is not contended that the complaint filed before the justice of the peace in Lenawee county, Michigan, is insufficient in form to charge the relator with the crime of embezzlement. No attack is made upon the form or sufficiency of the warrant issued by the justice of the peace upon that com

plaint, or the warrant of rendition issued by the governor
of this state. It is therefore conceded that the proceed-
ings in those matters were regular and sufficient. The
record discloses that they are amply supported by the
affidavits, the certificates of the proper officers, and the
showing which is contained in the bill of exceptions.
It is argued that the writ of habeas corpus should
have been granted, and the relator discharged from cus-
tody, because the request of the governor of Michigan con-
tains a statement that the relator was wanted for a crime
committed in the county of Van Buren, instead of Lena-
wee county, in that state. It appears, however, that this
statement was merely a clerical error, which in no way
affects the validity of the rendition warrant issued by the
governor of this state, and under which relator was taken
into custody. In *State v. Clough,* 71 N. H. 594, 605, 67
L. R. A. 946, it was said: "The evidently clerical error
in the affidavit of the clerk of court, that the indictment
was returned 'on the second Monday of February, A. D.
1892,' did not preclude a finding by the governor that the
true date was the second Monday of February, 1902. The
caption of the indictment, as well as the affidavit of the
district attorney, fully authorized that conclusion, which
is placed beyond peradventure by an amendment of the
clerk's affidavit in this court. The objection urged on
this ground is a refinement of technical reasoning which
has nothing to commend it in the modern administration
of justice in criminal cases." It should be observed that
in the request for the rendition warrant the governor of
the state of Michigan asks that the relator be apprehended
and delivered to the respondent, who is authorized to re-
ceive and convey him to that state, there to be dealt with
according to law; and the rendition warrant issued by
the governor of this state authorizes and requires the
respondent to take the relator into custody, and return
him to the state of Michigan, there to be dealt with ac-
cording to law. We are therefore of opinion that the
relator's contention upon this point is without merit.

It is conceded that the question as to whether the relator is substantially charged with the commission of a crime is one of law. That question was first presented to the governor of the state of Michigan, who was required to satisfy himself that a crime had been committed in his state. There was also attached to his requisition evidence of that fact in the copies of the judicial acts on which the warrant for the relator's arrest was founded. These copies, together with all of the certificates, affidavits and other matters appended to, and made a part of, the request for the rendition warrant are found in the record, duly authenticated, and are sufficient to authorize the issuance of the warrant and to comply with the requisites necessary to authorize the demand as plainly specified in the act of congress, and sections 333 and 364 of the criminal code of this state. The certificates of the executive authority are made conclusive as to their verity when presented to the executive of the state where the fugitive is found. *Kentucky v. Dennison,* 24 How. (U. S.) 66.

Again, this question was first passed upon by the governor of the state of Michigan, who had before him the record of the judicial acts on which the warrant for. relator's arrest was issued, and the statute of his state pertaining to and defining the crime of embezzlement. That statute, duly exemplified, appears in evidence in the bill of exceptions. It differs materially from the ordinary statutes of embezzlement found in most of the states. It makes it a crime to convert to one's own use, not only property and money belonging to another, but also money or property "which is partly the property of another and partly the property of an officer, agent, clerk, servant, attorney at law, collector," etc. The complaint charges, in substance, that William A. Maynard, in the county of Lenawee, in state of Michigan, being the agent, clerk, servant and employee of John P. Bland, did then and there take into his possession and receive the sum of $98 by virtue of his employment as such agent, clerk, servant and employee, said money being the property of said

John P. Bland, and did then and there convert and embezzle said money to his own use without the consent of the said Bland.   The second count of the complaint charges the same, except that Maynard received the money as collector of the said John P. Bland.   And the third count contains a like charge, with the exception of the allegation that the money was concealed by the said Maynard with intent to convert the same to his own use.   All three counts of the complaint are fully covered by the statute of the state of Michigan above referred to, and each constitutes a crime under the laws of that state.   It follows that upon the face of the proceeding the relator is substantially charged with a crime against the laws of the state of Michigan.   In order to avoid the effect of this record, and in his attempt to secure his release, the relator set forth in his petition what he alleges to be his contract with the complaining witness, Bland, and testified upon the trial in the district court that Bland was owing him a considerable amount of money as commissions on accounts collected by Bland himself.   It is also contended that by the terms of his contract the relator was not required to account for and pay over the money belonging to his principal until after the expiration of one year from the date of his employment.   It appears, however, by the terms of the contract that the relator was required to settle with Bland every 90 days; that his first settlement and accounting was due on the 19th day of May, 1912.   The record discloses that demand was made upon relator for settlement and payment of the money in his hands; that, instead of making such settlement, he immediately left the county and state of his residence, to which he has never since returned.

Upon this showing it is argued that the relator was not guilty of the crime of embezzlement with which he was charged.   It may be conceded that the relator's act would not constitute the crime of embezzlement in this state; but the provisions of the criminal law of the state of Michigan found in this record are entirely different

from the provisions of the criminal laws of this state; and the matters urged by the relator to secure his release do not show or tend to show that he was not substantially charged with a criminal offense. At most, his testimony relates to matters which might be urged as a defense on his trial upon the complaint in question. As we view the record, the governor of this state correctly determined that the matters before him were amply sufficient to show that the relator was substantially charged with the commission of a crime against the laws of the state of Michigan.

Finally, it is contended that the relator is not a fugitive from justice. The testimony discloses that the public prosecutor of Lenawee county, in the state of Michigan, was acquainted with the relator personally; that he talked with him a number of times in the city of Adrian, Michigan, during the months of April and May, 1912; that he knew relator was conducting a collection business there, and was informed and believed that relator upon leaving Adrian came to Lincoln, Nebraska, and engaged in the collection business similar to that conducted at Adrian, under the name of Charles W. Willard. The respondent Henig testified that he made diligent search for the relator, beginning about the 27th day of May, 1912, and continuing to the 17th of October of that year, when he located relator under the name of Charles W. Willard at Lincoln, Nebraska. It appears beyond question that the relator was a resident of the city of Adrian, in the state of Michigan, at the time of the commission of the offense with which he is charged. The testimony discloses that he left that city on or about the 26th day of May, 1912, stating that he was going to Buffalo for the purpose of bringing his household goods to Adrian; that, instead of going to Buffalo, he went to the city of Detroit. He admits that he there assumed the name of Wilson, and gave as a reason therefor that his wife's people were seeking him in order to procure his arrest for not supporting her. He admitted that he had communicated with his

former office but twice, and that within a week after he left Adrian; that he came to Lincoln and established a collection agency under the name of Charles W. Willard. He also testified that he intended to return to Michigan and continue his business there. It appears from the record that prior to his coming to Lincoln the relator was in the city of Grand Island, in this state, where he engaged in a like business; that an officer from that city intervened in this proceeding, and asked that the relator be remanded to his custody to answer to a crime charged to have been committed by him in that city similar to the one with which he is charged in the proceedings contained in this record.

From the testimony contained in the record, the conclusion is irresistible that when the relator left the city of Adrian he never intended to return; that he changed his name when in the city of Detroit, and there assumed the name of Wilson; that he fled from there to the state of Nebraska, and again changed his name to that of Charles W. Willard. After reading the entire record, we are of opinion that the district court of Lancaster county was justified in finding that the relator is a fugitive from the justice of the state of Michigan. *Dennison v. Christian,* 72 Neb. 703.

The trial judge having correctly resolved both of the questions presented by this record against the relator, and having properly refused to release him by the writ of habeas corpus, the judgment of the district court is

AFFIRMED.

HAMER, J., dissenting.

My sense of duty compels me to record a dissent from the majority opinion. The government is to protect the people in the enjoyment of their homes, their liberty, and their lives, and they should not be disturbed in such enjoyment because of criminal proceedings commenced against them in a foreign state, unless such enjoyment has been forfeited by a clear violation of written law, and

such violation is made manifest by the application of the demanding state supported by evidence which is satisfactory to our courts. The decision of the governor of the asylum state is not final. The alleged fugitive is entitled to sue out a writ of habeas corpus and refer the question to the courts. Hawley, Interstate Extradition, p. 29; *In re Briscoe*, 51 How. Pr. (N. Y.) 422. He further says: "It must appear in some way that the act charged amounts to a crime in the demanding state. This is a jurisdictional fact." On application to the courts, a prisoner may be discharged. That some one has alleged a conclusion before the justice of the peace in Michigan who issued the warrant against the alleged fugitive, and which the governor of that state seeks to comply with, should not be enough to subject the prisoner to the inconvenience, expense and ignominy of arrest and prosecution. The danger is that a loose application of the extradition law between states may be used for the mere purpose of enforcing a collection. This should not be tolerated. As this case comes here on appeal from the judgment and order of the district court for Lancaster county, it follows that the evidence must be considered as all included in the testimony taken before the district court and in the original application for the order of arrest. This application is based upon affidavits hereinafter referred to, and which were filed before the justice of the peace in Michigan.

In the view that I take of this case, the petitioner entered into a contract with one Dr. Bland for the attempted collection of a lot of doctor bills, and the contract provides for *mutual accounts* between the petitioner and Bland; that is, if the debtor paid an account to Bland, then Bland was to be indebted to the petitioner in the sum of 25 per cent. of the amount paid, and, if the petitioner collected a claim, he was to give 75 per cent. of it to Bland, and *quarterly settlements* were to be made between them, the contract looking to a *final settlement at the end of one year.* There was no guilt on the part of

the petitioner, because Bland was indebted to the petitioner for commissions where the debtors had paid directly to Bland, and the petitioner was indebted to Bland on accounts which he had collected, and the contract was made between them on the 19th of February, 1912, and *the year* which the contract was to run had not expired and would not expire until February 19, 1913.   Before the year was one-half over, and in May, these proceedings were commenced.

Two affidavits by Bland were filed before the justice of the peace who issued the warrant.   The first affidavit contains a formal charge of embezzlement without the details, and the other affidavit proceeds in detail to set up the facts which constitute the alleged offense.   One of these affidavits charges the indebtedness of the relator *on information and belief*.   Of course, the charge against the accused is no stronger than its weakest statement, and, if the weakest statement is on information and belief, then the *whole charge* stands on *information and belief*, and the result is that a man is arrested and taken away from his family and prosecuted when the charge against him is on *information and belief*.   The affidavit setting forth the details recites that the accused entered into a contract with the complainant under the name of the "Mercantile Law Company," and said he had a peculiar system of collecting; that he made personal calls on all debtors; that he would take statements of accounts and collect the same on a commission basis; that "he represented that he would take the accounts and collect the money due from the debtors and *settle* with me for all amounts collected on a certain date."   The affidavit then sets up the fact that the petitioner "was to collect as many of said accounts as possible for me, and that he was to retain 25 per cent. of the amount collected for his work; that 75 per cent. of the amount collected was to be held by him, as my agent, for a period of 90 days from the date the contract was entered into;   *   *   *   that this contract last mentioned was entered into on or about February 19,

1912;" that in compliance therewith he, the said Dr. Bland, gave the said petitioner a large number of accounts, beginning with Morris Duffield, $6 and reciting the accounts, "on which accounts the said William A. Maynard has collected the sum of $98, as *deponent is informed and believes,*" said information being based upon the adffiavits of the said parties last mentioned that they have paid various amounts, as mentioned in said affidavits, to said William A. Maynard on said accounts. The agreement made between Dr. Bland and the petitioner, omitting the heading and the signatures, and the closing, is as follows:

"This agreement witnesseth: That J. P. Bland of Adrian, Mich., has become a subscriber to Mercantile Law Co., of Cleveland, Ohio, and that said subscriber is entitled to the benefits herein set forth for the term of one year from above date. Mercantile Law Co. obligates itself to give prompt attention to all claims placed in its hands for collection and adjustment by said subscriber, and also agrees to apply such legal redress which will enforce collections. The subscriber hereby authorizes Mercantile Law Co. to commence actions at its discretion in the several courts of this state or of any other state on any of the claims placed in its hands, and agrees that, if such action be brought, he will in no manner interfere with the same, or cause the action to be discontinued until the case has been prosecuted to judgment, unless the consent of Mercantile Law Co. can be obtained. In consideration of the aforesaid services, J. P. Bland of Adrian, Mich., agrees to report to Mercantile Law Co. as soon as collected all payments received on claims filed for collection and to pay to said Mercantile Law Co. at once a commission of 25 per cent. on all collections and settlements made on the accounts placed in its hands, whether the money is paid by the debtor to Mercantile Law Co. or to the subscriber. It is mutually agreed that this contract shall remain in force for a period of one year from the above date, and that Mercantile Law Co. shall be entitled to its

commission on all claims settled by either party hereto, within the life of this contract. It is further agreed by Mercantile Law Co. that it shall make settlement for all moneys belonging to the subscriber once every 90 days from the date hereof. It is mutually agreed and understood by both parties herein mentioned, that payment of the aforesaid commissions upon all collections and settlements shall constitute the full amount of liability of the subscriber."

It will be observed that the liability in this case is based upon a contract of (1) doubtful meaning, (2) uncertain "information and belief." If the mere charge against the relator in a case of this kind is sufficient to enable him to be taken from his home to a foreign state there to be prosecuted, then liberty is not very secure in Nebraska. It is not the name by which an alleged criminal act is called that determines whether the thing done is done in violation of the law; it is the act done. It is unreasonable to suppose that the laws of Michigan provide for the punishment of a collector who is not in default under a contract which he has made with his client or customer. To the writer it is time enough for Dr. Bland to insist upon his warrant for extradition when he has demonstrated the fact under his doubtful contract that the relator owes him. The contract might receive one construction in Nebraska and another in Michigan. Dr. Bland became a subscriber to the "Mercantile Law Company," and was "entitled to the benefits" set forth in the agreement "for the term of *one year*" from February 19, 1912, the date of the agreement. The second paragraph obligates the "Mercantile Law Company" to give prompt attention and adjustment by said subscriber, "and also agrees to apply such legal redress which (as) will enforce collections." The next paragraph authorizes the law company to commence actions in the courts of the state or of any other state, and obligates the doctor not to interfere with the same. The next paragragh provides the terms of compensation, and that the contract *shall remain in force for the period of*

*one year;* that the parties shall make *settlement* every **90** days. It is contended by the prosecution that to make "settlement" means to make payment. The word "settlement" is defined in Webster's New International Dictionary at length. That part of it applicable to this case reads: "Act or process of adjusting or determining; composure of doubts or differences; arrangement; adjustment; as, settlement of a controversy, of accounts, etc.; also, condition of affairs thus adjusted." It was not payment that was talked about, but a mere settlement, an adjustment from time to time between the parties, and there could be *no default* by either party until the *expiration of the year.* Townsend, Moran, Grouth, Kelley, Lewis, Edmund, each made payments to Dr. Bland on which the doctor owed the relator his commissions. Howes, Townsend, Kelley, Lewis, Edmund, Seethaller, Sherman, and Preston also paid money to Dr. Bland, and he retained the commission due to the relator. Dr. Bland's affidavit says they were doctor bills, "statements of accounts which were owing to me from *patients* for services rendered." It is the doctor's contention that the relator owes him *under the contract a balance* for collecting these doctor bills, many of which were old, and some of which were outlawed.

Something of an examination of the embezzlement cases in Michigan shows that the relator should not be convicted. *People v. Wadsworth,* 63 Mich. 500. In the foregoing case funds were deposited in a bank that belonged to the city treasurer. They were put in there as ordinary deposits, and it was held that the banker was not guilty of embezzlement. See, also, 3 Howell, Ann. St. (Mich.) sec. 9263*a,* making it a felony for a public official to appropriate to his own use moneys received in his official capacity, and section 9263*c,* making the failure to pay over to his successor all moneys and property collected *prima facie* evidence of the offense. In this case it was held that the accused might rebut a *prima facie* case made under the statute by proving that moneys were in fact

received, and that the shortage represented saw-logs which he had taken in payment of taxes, in lieu of money, and which had been lost. *People v. Seeley,* 117 Mich. 263. The court held that there should be an order of court which he refused to obey. That applies to this case. There is no order of the court in this case, touching the indebtedness, which the relator refuses to obey. Along the same line is *People v. Fairchild,* 105 Mich. 437.

The law under which the relator is prosecuted reads: "Section 55. If any officer, agent, clerk, or servant of any incorporated company, foreign or domestic, or if any clerk, agent, or servant of any private person, or of any copartnership, except apprentices and other persons under age of sixteen years, or if any attorney at law, collector, or other person, who, in any manner, receives or collects money or any other property for the use of and belonging to another, embezzles or fraudulently converts to his own use, or takes and secretes with intent to embezzle and convert to his own use without the consent of his employer, master, or the owner of the money or goods collected or received, any money or property of another, or which is partly the property of another and partly the property of such officer, agent, clerk, servant, attorney at law, collector, or other person, which has come to his possession or under his care in any manner whatsoever, he shall be deemed to have committed larceny, and, in a prosecution for such crime, it shall be no defense that such officer, agent, clerk, servant, attorney at law, or other person, was entitled to a commission out of such money or property, as commission for collecting or receiving the same for and on behalf of the owner thereof; provided, that it shall be no embezzlement on the part of such agent, clerk, servant, attorney at law, collector, or other person, to retain his reasonable collection fee on the collection, or any other valid interest he may have in such money or property." 3 Howell, Ann. St. (Mich.) sec. 9176a. The foregoing contemplates that the person making the collection shall retain his commission "or any other valid in-

terest he may have in such money or property." The petitioner testifies, and it is not denied, that he was put to expense in the collection of these accounts. He is entitled therefore to payment. It follows, therefore, from the act itself and from the decision of this court in *Van Etten v. State*, 24 Neb. 734, as, also, *Miller v. State*, 16 Neb. 179, and *State v. Kent*, 22 Minn. 41, that the petitioner is not guilty of embezzlement under the statute.

There can be no criminal intent so long as the agent or collector is making an honest contention for what he deems to be his own. *Hamilton v. State*, 46 Neb. 284. Nor can there be a conviction where there is an unsettled and unliquidated account between the parties. *State v. Culver*, 5 Neb. (Unof.) 238. And, where the defendant in a criminal prosecution has an interest in the property or money alleged to have been fraudulently converted to his or her own use, there can be no conviction of the crime of embezzlement. *McElroy v. People*, 202 Ill. 473.

I am unable from the record to see that the relator is guilty of anything; but, if he is guilty of anything, then he is guilty of *false pretenses*. If he drew a contract and did not intend to go ahead and collect the money, but intended to get hold of some small part of it and then to keep it, and he used the contract as a fraudulent inducement for the purpose, then the thing done was not embezzlement, but it was false pretenses, and he should be arrested and tried upon that charge. *Hess v. Culver*, 77 Mich. 598, 18 Am. St. Rep. 421, 6 L. R. A. 498; *Pearl v. Walter*, 80 Mich. 317; *Knight v. Linzey*, 80 Mich. 396, 8 L. R. A. 476; *Stoney Creek Woolen Co. v. Smalley*, 111 Mich. 321; *Getchell v. Dusenbury*, 145 Mich. 197. Henig cannot lawfully return the relator to Van Buren county, because there is no charge pending against him there. There is no proof attached to the extradition warrant that the relator committed an offense in Van Buren county. If the relator is to be deprived of his liberty, first let a new application be made to the governor of Nebraska by the governor of Michigan and an orderly procedure be had.

The relator excuses changing his name upon the ground of difficulty with his mother-in-law, who threatened to prosecute him. He is now supporting his wife and two children.